Thomas A. Saenz** (Cal. Bar. No.  159430)
Andrés R. Holguin-Flores** (Cal. Bar No. 305860)
Andrés J. Gallegos** (Cal. Bar No. 313090)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
634 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Telephone: (213) 629-2512
E-mail: tsaenz@maldef.org
         aholguin-flores@maldef.org
         agallegos@maldef.org
*** pro hac vice application pending*

*Attorneys for Plaintiffs*
*Additional Counsel Listed on Next Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane V.; John A.; John E.; Jane F.; John D.; John M.; Jane N.; and John W.; individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| Motel 6 Operating L.P., a limited partnership; G6 Hospitality LLC, a limited liability company, dba Motel 6; and Does 1-10; | |
| Defendants | |

Nina Perales* (Tex. Bar No. 24005046)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL FUND
110 Broadway St., Suite 300
San Antonio, TX 78205
Telephone: (210) 224-5476
E-mail: nperales@maldef.org
*admitted pro hac vice*

Daniel R. Ortega, Jr. (Ariz. Bar No. 005015)
ORTEGA LAW FIRM, P.C.
361 East Coronado Rd., Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-4455
Facsimile: (602) 386-4480
E-mail: danny@ortegalaw.com

## I.      INTRODUCTION

1.      Motel 6 employs a corporate policy and/or practice of disclosing guest registration information, including guests' personal information, to agents of United States Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS").  Plaintiffs challenge this policy and/or practice because it is racially discriminatory, unconstitutional, and violates laws that protect privacy rights and the rights of consumers.

2.      Defendants Motel 6 Operating, L.P., G6 Hospitality LLC, and Does 1-10 (hereafter, collectively referred to as "Motel 6") disclose guests' personal information to DHS and ICE agents without requiring a warrant or reasonable suspicion of criminal activity, in violation of the company's written assurances that it protects the privacy of its guests, and to assist DHS and ICE agents in unlawfully arresting or otherwise detaining guests.  Motel 6's policy and/or practice of disclosing guests' personal information to ICE agents violates the United States Constitution, federal civil rights statutes and Arizona statutes. Plaintiffs bring this class action to obtain a declaration that Motel 6 violates federal and state law, and to obtain injunctive relief and damages.

## II.      JURISDICTION AND VENUE

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 and under 42 U.S.C. § 1983 over Plaintiffs' claims under federal law and the Constitution of the United States.  This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. §§ 2201

and 2202.  This Court has supplemental jurisdiction over Plaintiffs' common and state law claims under 28 U.S.C. § 1367.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

### III.    PARTIES

4.     Plaintiff Jane V. is Latina and a resident of Glendale, Arizona.

5.     Plaintiff John A. is Latino and a resident of Phoenix, Arizona.

6.     Plaintiff John E. is Latino and a resident of Tucson, Arizona.

7.     Plaintiff Jane F. is Latina and a resident of Tucson, Arizona.

8.     Plaintiff John D. is Latino and a resident of Phoenix, Arizona.

9.     Plaintiff John M. is Latino and a resident of Phoenix, Arizona.

10.    Plaintiff Jane N. is Latina and a resident of Phoenix, Arizona.

11.    Plaintiff John W. is Latino and a resident of Auburn, Washington.

12.    Plaintiffs proceed individually and on behalf of all others similarly situated.

13.    Defendant Motel 6 Operating, L.P., is a limited partnership headquartered in Carrollton, Texas.  Defendant Motel 6 Operating, L.P., owns and manages Motel 6 hotels throughout the United States, including those at 1530 North 52nd Drive, Phoenix, Arizona 85043 ("Motel 6 Phoenix West") and 4130 North Black Canyon Highway, Phoenix, Arizona 85017 ("Motel 6 Black Canyon").

14.    Defendant G6 Hospitality LLC, doing business as Motel 6, is a limited liability company headquartered in Carrollton, Texas.  Defendant G6

Hospitality LLC owns and manages Motel 6 hotels throughout the United States, including the Motel 6 Phoenix West and the Motel 6 Black Canyon. On the basis of knowledge and belief, G6 Hospitality LLC is the parent company of Motel 6 Operating, L.P.

15.    Defendants Does 1-10 are currently unidentified employees who work or worked at the Motel 6 Phoenix West and Motel 6 Black Canyon locations and who disclosed the personal information of motel guests to DHS and ICE agents. Defendants Does 1-10, acting on behalf of Defendants Motel 6 Operating, L.P., and G6 Hospitality LLC, conspired with DHS and ICE agents in the unlawful interrogation, detention, and arrest of Plaintiffs.

## IV.    FACTUAL ALLEGATIONS

16.    Since at least February 2017, Motel 6 employees at multiple Motel 6 locations in Phoenix, Arizona, disclosed the personal information of guests to DHS and ICE agents without requiring a warrant. These Motel 6 employees, identified herein as Does 1-10, acted pursuant to a company policy and/or practice, and in violation of the company's written assurances that it protects the privacy of its guests, to facilitate DHS and ICE agents' unreasonable and warrantless interrogation, detention, and arrest of motel guests, including Plaintiffs.

### a.    <u>Plaintiff Jane V.</u>

17.    On or about June 25, 2017, Plaintiff Jane V. registered as a guest at the Motel 6 Black Canyon with her four children. Plaintiff Jane V. and her children checked into the Motel 6 Black Canyon to escape the heat because their

apartment lacked air conditioning.  Plaintiff Jane V. showed a Motel 6 employee her Mexican consular identification card when she registered as a guest.  A Motel 6 employee made a photocopy of Plaintiff Jane V.'s consular identification card.

18.     On or about June 26, 2017, at approximately 5:00 a.m., three ICE agents banged loudly on the door of the room where Plaintiff Jane V. and her children slept.  The ICE agents verbally identified themselves as "police."  Plaintiff Jane V. opened the door.  ICE agents interrogated Plaintiff Jane V. in front of her children.  One of the ICE agents referred to Plaintiff Jane V. by name and asked her to confirm her identity.  ICE agents threatened to separate Plaintiff Jane V. from her children.  Plaintiff Jane V. answered the ICE agents' questions.  After interrogating Plaintiff Jane V., the ICE agents gave Plaintiff Jane V. a "Call-in Letter" instructing her to report to ICE's Phoenix Field Office in the next few days.

19.     As instructed by the "Call-in Letter," several days later Plaintiff Jane V. presented herself at ICE's Phoenix Field Office.  At the Field Office, ICE agents interrogated, fingerprinted, and issued Plaintiff Jane V. a "Notice to Appear."  When Plaintiff Jane V. asked an ICE agent if a Motel 6 employee had provided her personal information to ICE, the ICE agent laughed and told her that her name had coincidently "popped up" in the agency's computer system.

20.     Upon information and belief, ICE agents arrested Plaintiff Jane V. without a warrant and without reason to believe that Plaintiff Jane V. was likely to escape before a warrant could be obtained.

**b.      Plaintiff John A.**

21.     On or about July 5, 2017, Plaintiff John A. registered as a guest at the Motel 6 Phoenix West.  Plaintiff John A. showed a Motel 6 employee his Mexican passport when he registered as a guest.  A Motel 6 employee made a photocopy of Plaintiff John A.'s Mexican passport.

22.     On or about July 6, 2017, at approximately 5:00 a.m., three ICE agents banged loudly on the door and window of the room where Plaintiff John A. slept.  Plaintiff John A. opened the door and stepped outside.  Plaintiff John A. saw ICE agents holding a paper that, based on his knowledge and belief, was printed on paper with Motel 6's logo and that contained his name and room number.  ICE agents interrogated Plaintiff John A. outside of the motel room.  One of the ICE agents referred to Plaintiff John A. by name and asked Plaintiff John A. to confirm his identity.  Plaintiff John A. answered the ICE agents' questions.  ICE agents handcuffed Plaintiff John A. and took him into custody.  ICE agents transferred Plaintiff John A. to ICE's Phoenix Field Office in a van with others whom ICE agents had detained that morning at the Motel 6 Phoenix West.

23.     At ICE's Phoenix Field Office, ICE agents interrogated, fingerprinted, and issued Plaintiff John A. a "Notice to Appear."  When Plaintiff John A. asked an ICE agent if a Motel 6 employee had provided his personal information to ICE agents, the ICE agent told him that he could not share those details.  Plaintiff John A. paid a $12,000 bond and was subsequently permitted to leave the Field Office.

24.     Upon information and belief, Plaintiff John A.'s room was located in an area on motel property that was, at all material times, enclosed behind a gate that could only be accessed with a motel pass.  Upon information and belief, Motel 6 employees, acting pursuant to a company policy and/or practice, granted ICE agents access to the area where Plaintiff John A.'s room was located.

25.     Upon information and belief, ICE agents arrested Plaintiff John A. without a warrant and without reason to believe that Plaintiff John A. was likely to escape before a warrant could be obtained.

### c.      Plaintiffs John E. and Jane F.

26.     On or about July 18, 2017, Plaintiff John E., Plaintiff Jane F., and their three children registered as guests at the Motel 6 Phoenix West.  Plaintiffs John E. and Jane F. had travelled to Phoenix with their children so that Plaintiff John E. could start a new job.  Plaintiff John E. showed a Motel 6 employee his Mexican driver's license when he registered as a guest.  A Motel 6 employee made a photocopy of Plaintiff John E.'s Mexican driver's license.

27.     On or about July 19, 2017, at approximately 5:30 a.m., as Plaintiff John E. sat in his car in the Motel 6 parking lot and prepared to drive to work, an ICE vehicle parked in front of Plaintiff John E.'s car, blocking it from leaving. ICE agents exited the vehicle and approached Plaintiff John E.'s car.  One of the ICE agents referred to Plaintiff John E. by name and asked Plaintiff John E. to confirm his identity.  Plaintiff John E. saw ICE agents holding a paper that, based on his knowledge and belief, contained his name and room number.  ICE agents

interrogated Plaintiff John E.  Plaintiff John E. answered the ICE agents'
questions.  ICE agents handcuffed and placed Plaintiff John E. into a van.
Plaintiff John E. overheard, on an ICE agent's radio, that ICE agents were
investigating four or five other rooms at the Motel 6 Phoenix West.  ICE agents
arrested and transferred Plaintiff John E. to ICE's Phoenix Field Office.

28.     At ICE's Phoenix Field Office, ICE agents interrogated,
fingerprinted, and issued Plaintiff John E. a "Notice to Appear."  When Plaintiff
John E. asked an ICE agent if a Motel 6 employee provided ICE agents his
personal information, the ICE agent laughed and told Plaintiff John E. that ICE
arrested him during a standard raid.  ICE agents transferred Plaintiff John E. to an
immigration detention center where he was held for more than 30 days before he
paid a $7,500.00 bond and was released.

29.     After detaining Plaintiff John E. in the Motel 6 parking lot, ICE
agents banged loudly on the door of the room where Plaintiff Jane F. and her three
children slept.  Plaintiff Jane F. opened the door.  ICE agents informed Plaintiff
Jane F. that her husband had been arrested.  ICE agents interrogated Plaintiff Jane
F. in front of her children.  Plaintiff Jane F. answered the ICE agents' questions.
ICE agents left Plaintiff Jane F. with her children.

30.     Upon information and belief, ICE agents arrested Plaintiff John E.
without a warrant and without reason to believe Plaintiff John E. was likely to
escape before a warrant could be obtained.

### d.      Plaintiff John D.

31.     On or about July 9, 2017, Plaintiff John D. registered as a guest at the Motel 6 Phoenix West.  Plaintiff John D. showed a Motel 6 employee his Mexican consular identification card when he registered as a guest.  A Motel 6 employee made a photocopy of Plaintiff John D.'s consular identification card.

32.     On or about July 10, 2017, at approximately 6:00 a.m., two ICE agents approached and immediately handcuffed Plaintiff John D. in the Motel 6 parking lot as he approached his car to drive to work.  ICE agents removed Plaintiff John D.'s wallet from his pocket and asked Plaintiff John D. for documentation showing authorized presence in the United States.  ICE agents interrogated Plaintiff John D.  ICE agents took Plaintiff John D. into custody and transferred him to ICE's Phoenix Field Office.

33.     At ICE's Phoenix Field Office, ICE agents interrogated, fingerprinted, and issued Plaintiff John D. a "Notice to Appear."  Plaintiff John D. paid a $10,000 bond and was subsequently permitted to leave the Field Office.

34.     Upon information and belief, ICE agents arrested Plaintiff John D. without a warrant and without reason to believe that Plaintiff John D. was likely to escape before a warrant could be obtained.

### e.     Plaintiffs John M. and Jane N.

35.     On or about June 28, 2017, Plaintiff John M. registered as a guest at the Motel 6 Phoenix West.  Plaintiff Jane N. accompanied Plaintiff John M., who is her husband.  Plaintiffs John M. and Jane N. checked into the Motel 6 Phoenix West to escape the heat because the air conditioning in their home was not

functioning.  Plaintiff John M. showed a Motel 6 employee his Mexican passport

when he registered as a guest.  A Motel 6 employee made a photocopy of Plaintiff

John M.'s Mexican passport.

36.     On or about June 29, 2017, at approximately 6 a.m., three ICE

agents banged loudly on the door of the room where Plaintiffs John M. and Jane

N. slept.  The ICE agents demanded entrance to the room and stated that they were

searching for a person.   Plaintiff John M. opened the door.  The ICE agents

immediately entered the room and handcuffed Plaintiff John M.  ICE agents

interrogated Plaintiff John M.  Plaintiff John M. answered the ICE agents'

questions.  ICE agents fingerprinted Plaintiff John M.

37.     As ICE agents entered and detained Plaintiff John M., Plaintiff Jane

N. was in the bathroom attempting to change clothing.  Plaintiff John M. told ICE

agents that Plaintiff Jane N. was sick and in recovery from a recent surgery, for

which she was taking medication and bleeding regularly.  ICE agents demanded

that Plaintiff Jane N. exit the bathroom.  Immediately after Plaintiff Jane N. exited

the bathroom, ICE agents handcuffed her. ICE agents interrogated and

fingerprinted Plaintiff Jane N.  Plaintiff Jane N. answered the ICE agents'

questions.  ICE agents arrested and transferred Plaintiffs John M. and Jane N. to

ICE's Phoenix Field Office.

38.     At ICE's Phoenix Field Office, ICE agents separated Plaintiffs John

M. and Jane N.  ICE agents interrogated and issued Plaintiff John M. a "Notice to

Appear."  Plaintiff John M. paid a $3,000 bond and was subsequently permitted to

leave the Field Office.  ICE agents transferred Plaintiff Jane N. to a detention

center.  ICE agents allowed Plaintiff John M. to speak with Plaintiff Jane N. at the

Field Office for only a few minutes before transferring Plaintiff Jane N. to a

detention center.  The following day, on June 30, 2017, DHS removed Plaintiff

Jane N. from the United States.

39.    Upon information and belief, ICE agents arrested Plaintiffs John M.

and Jane N. without a warrant and without reason to believe that Plaintiffs John M.

and Jane N. were likely to escape before a warrant could be obtained.

### f.    Plaintiff John W.

40.    On or about June 26, 2017, Plaintiff John W. registered as a guest at

the Motel 6 Phoenix West.  Plaintiff John W. was accompanied by his mother,

brother, and two children.  Plaintiff John W. and his family checked into the Motel

6 Phoenix West in order to attend a court hearing for Plaintiff John W.'s wife.

Plaintiff John W. showed a Motel 6 employee his Washington state driver's

license when he registered as a guest.  A Motel 6 employee made a photocopy of

Plaintiff John W.'s Washington state driver's license.

41.    On or about June 28, 2017, at approximately 6:00 a.m., Plaintiff

John W. and his family awoke to the sound of someone pulling on the handle of

their motel room door.  Plaintiff John W. saw, through the window, an agent with

a jacket identifying the agent as "police."  Plaintiff John W. opened the room door.

ICE agents immediately pulled Plaintiff John W. by his hand and handcuffed him.

ICE agents interrogated and fingerprinted Plaintiff John W.  ICE agents entered

the room and interrogated Plaintiff John W.'s mother, who was crying.  ICE

agents directed Plaintiff John W.'s mother to be quiet and console his oldest child,

who was also crying.  ICE agents arrested and transferred Plaintiff John W. to

ICE's Phoenix Field Office.

42.     At ICE's Phoenix Field Office, ICE agents fitted Plaintiff John W.

with an ankle bracelet monitor.  ICE agents ordered Plaintiff John W. to report to

ICE in Washington in a few days.

43.     Upon information and belief, ICE agents arrested Plaintiff John W.

without a warrant and without reason to believe that Plaintiff John W. was likely

to escape before a warrant could be obtained.

### g.     Motel 6

44.     Upon information and belief, Motel 6 maintains a policy and/or

practice of disclosing guest registration information, including personal

information, of its guests to DHS and ICE agents without a warrant or reasonable

suspicion of a crime.

45.     At all relevant times, Motel 6 employees, including Does 1-10, acted

within the scope of their employment and pursuant to a policy and/or practice of

disclosing the personal information of its guests, including Plaintiffs, to DHS and

ICE agents.  At all relevant times, Motel 6 directed and supervised its employees'

conduct pursuant to its policy and/or practice of disclosing guest registration

information to DHS and ICE agents.

### h.   Conspiracy with DHS and ICE

46.    Beginning at least as early as February 2017, Motel 6 directed its employees to disclose guest registration information, including guests' personal information, to ICE agents.  Upon information and belief, Motel 6 maintained this policy and/or practice pursuant to an agreement between Motel 6, DHS and ICE. Upon information and belief, Motel 6 employees were encouraged by Motel 6 to act for the benefit of law enforcement and a relationship with law enforcement. Motel 6 and ICE maintained this policy and/or practice with the goal that ICE agents interrogate, detain, and arrest guests, including Plaintiffs, without a warrant or reasonable suspicion.

47.    In furtherance of Motel 6's goal, and for this purpose, Motel 6 obtained the personal information of its guests and disclosed it to ICE agents to facilitate ICE agents' unreasonable and warrantless interrogation, detention, and arrest of its guests, including Plaintiffs.  Upon information and belief, Motel 6 disclosed Plaintiffs' personal information, including names and room numbers, to ICE agents pursuant to an agreement between Motel 6 and ICE agents.

48.    In furtherance of Motel 6's goal, Motel 6 employees granted ICE agents access to gated and non-public areas that were under Motel 6's exclusive control in order to facilitate ICE agents' interrogation, detention, and arrest of guests, including Plaintiffs, without a warrant or reasonable suspicion.

49.    As was the plan, no arrest or search warrants were ever obtained by ICE for any guests at any Motel 6 locations.  Instead, without warrants, ICE

agents, supported by Motel 6 and its employees, unlawfully detained, interrogated, and arrested individuals without cause or consent and in violation of guests' civil rights.

50.     By disclosing the personal information of its guests, including Plaintiffs, to DHS and ICE agents, Motel 6 performed a function that is traditionally the exclusive prerogative of the federal government.

51.     Motel 6's disclosure of guest information, and the conspiracy amongst all Defendants and ICE agents to unlawfully interrogate, detain, and arrest guests was planned and executed under color of state law, federal law, or both.

52.     Motel 6's privacy policy, available online, provides: "we are committed to safeguarding the privacy of the personal information that we gather." Motel 6's privacy policy further states: "[w]e may disclose Guest Information to law enforcement agencies . . . pursuant to a court order, or in compliance with any applicable law, regulation, rule or ordinance."

53.     At all relevant times, Motel 6, including Does 1-10, did not act pursuant to its privacy policy.

54.     Plaintiffs maintained, at all relevant times, a reasonable expectation that their personal information, as contained in the guest registration information, would not be shared with DHS and ICE agents.  Plaintiffs also maintained, at all relevant times, a reasonable expectation of privacy and seclusion within their motel rooms.

### i.      Intent to Discriminate

55.      Plaintiffs shared their personal information and entered into an agreement with Motel 6 in order to stay the night at Motel 6 locations.  By disclosing Plaintiffs' personal information to DHS and ICE agents after they checked in, by violating its privacy policy as to Plaintiffs, and by intentionally violating the privacy of Plaintiffs, Motel 6 denied Plaintiffs the full benefits and enjoyment of their agreement with Motel 6, and treated Plaintiffs less favorably than other non-Latino guests.

56.      Motel 6 intended to discriminate against Plaintiffs and other Latinos on the basis of race and/or national origin when Motel 6, including Does 1-10, disclosed guests' personal information to DHS and ICE agents.  Motel 6 intended to deny Plaintiffs, on the basis of race and/or national origin, the full benefits and enjoyment of their agreement with Motel 6.  On the basis of knowledge and belief, Motel 6 acted with the knowledge that this policy and/or practice would result in Plaintiffs being harmed on the basis of their race.

57.      As a result of Motel 6's unlawful policy and/or practice, Plaintiffs suffered damages, including but not limited to, emotional distress, depression, anxiety, mental suffering, loss of liberty, fear, and humiliation.  Plaintiffs also incurred economic damages.

58.      Motel 6 conspired with DHS and ICE agents to violate the Fourth Amendment rights of Plaintiffs and deprive Plaintiffs of the equal protection of the laws.  Defendants acted in furtherance of the conspiracy when Motel 6 employees:

(a) disclosed guest registration information to ICE agents; and (b) granted ICE agents access to gated and non-public areas under Motel 6's exclusive control to facilitate ICE agents' interrogation, detention, and arrest of guests, including Plaintiffs, without a warrant or reasonable suspicion of a crime.  Motel 6 conspired with DHS and ICE agents to deny its Latino guests, including Plaintiffs, the full benefits and enjoyment of their agreement with Motel 6, and to discriminate against Plaintiffs on the basis of race and/or national origin.

### V.     CLASS ACTION ALLEGATIONS

59.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

60.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action and seek certification of the claims and certain issues in this action on behalf of a Class defined as: All persons, who are within the jurisdiction of the United States, who stayed at a Motel 6 location and were subjected to Motel 6's policy and/or practice of disclosing personal information to federal immigration agents between February 1, 2017 and the date of judgment in this action (the "Class"). Plaintiffs also seek to represent a subclass which consists of all Latinos who stayed at a Motel 6 location and were subjected to Motel 6's policy and/or practice of disclosing personal information to federal immigration agents. Plaintiffs also seek to represent a subclass which consists of all persons who stayed a Motel 6 location in Arizona and who were subjected to Motel 6's policy and/or practice of disclosing personal information to federal immigration agents.

61.     Plaintiffs reserve the right to amend the Class and Subclass definitions if further investigation and discovery indicates that the Class and Subclass definitions should be narrowed, expanded, or otherwise modified. Excluded from the Class and Subclasses are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class and Subclasses is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

62.     Plaintiffs are members of the Class and Subclasses.

63.     Upon information and belief, the members of the Class and Subclasses are so numerous that joinder of all of them is impracticable. Motel 6 has approximately 1,200 locations across the United States and in each of the 50 states. Plaintiffs do not know the precise number of Class and Subclass Members, as this information is in Motel 6's possession.

64.     There are questions of law and fact common to the Class and Subclasses, and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether is it Motel 6's policy and/or practice to disclose its guests' personal information to federal immigration agents; (2) whether Plaintiffs and the Class (and Subclasses) suffered harm as a result of Motel 6's unlawful policy and/or practice; (3) whether Plaintiffs and the Class (and Subclasses) are entitled to compensatory damages;

(4) whether Plaintiffs and the Class (and Subclasses) are entitled to noneconomic damages; (5) what equitable and injunctive relief for the Class (and Subclasses) is warranted; and (6) the scope of a resulting permanent injunction.

65.     Plaintiffs' claims are typical of the claims of the Class and Subclasses because: (1) Plaintiffs were within the jurisdiction of the United States; (2) Plaintiffs were subjected to Motel 6's policy and/or practice of disclosing personal information to federal immigration agents; and (3) Plaintiffs were harmed as a result of Motel 6's conduct. All of these claims are substantially shared by each and every member of the Class and Subclasses.  All of the claims arise from the same course of conduct by Motel 6, and the relief sought is common.

66.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and Subclasses.  Plaintiffs have no conflict with any member of the Class or Subclasses. Plaintiffs are committed to the goal of having Defendants cease their policy and/or practice of disclosing guests' personal information to federal immigration agents.

67.     Plaintiffs have retained counsel competent and experienced in complex class actions involving race and national origin discrimination.

68.     The universe of people affected by Defendants' unlawful policy and/or practice is ascertainable through Defendants' records and, therefore, the Class and Subclasses are ascertainable.

69.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or refused to act on grounds generally

applicable to the Class and Subclasses, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class and Subclasses as a whole. Defendants have denied the full enjoyment and benefits of accommodation to Plaintiffs and the Class and Subclasses by disclosing their personal information to federal immigration agents.  Members of the Class and Subclass are entitled to injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policy and/or practice.

70.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class and Subclasses, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. Members of the Class and Subclasses have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory policy and/or practice.  Damages are capable of measurement on a class-wide basis and will be calculated based on economic and noneconomic losses incurred as a proximate result of Defendants' unlawful conduct.  Plaintiffs and the Class and Subclasses will rely on common evidence to resolve their legal and factual questions. There are no pending actions raising similar claims for damages. The proposed representatives for the Class and Subclasses are residents of Arizona, with the exception of John W who is a resident of Washington. Defendants engage in continuous, permanent, and substantial activity in Arizona.

There will be no undue difficulty in the management of this litigation as a class action.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Discrimination in Violation of 42 U.S.C. § 1981

71.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

72.     Title 42 of the United States Code Section 1981 makes it unlawful for a private actor to discriminate on the basis of race or national origin in the making and enforcement of contracts.

73.     Defendants intentionally discriminated against Plaintiffs on the basis of their race and/or national origin by denying Plaintiffs "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" in violation of 42 U.S.C. § 1981(b).

74.     Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct. Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

### Conspiracy in Violation of 42 U.S.C. § 1985(3)

75.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

76.     Title 42 of the United States Code Section 1985(3) provides a private right of action against individuals who conspire to deprive a person of the equal protection of the laws, or of having and exercising a right or privilege under the law.

77.     Defendants are and/or were, at all material times, engaged in, and acted in furtherance of, a conspiracy in violation of 42 U.S.C. § 1985(3).

78.     Defendants acted willfully, deliberately, maliciously or with reckless disregard for the Plaintiffs' civil rights.

79.     As a result of Defendants' acts in furtherance of the conspiracy, Plaintiffs suffered damages, including, but not limited to, loss of liberty, humiliation, fear, and emotional distress.  Plaintiffs are entitled to general and punitive damages in an amount to be determined at trial.

80.     As a result of Defendants' acts in furtherance of the conspiracy, Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial. Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### Fourth Amendment Violation

81.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

82.     The Fourth Amendment provides "[t]he right of people to be secure in their persons" and protects against "unreasonable searches and seizures" without a warrant and without probable cause. U.S. Const. Amend. IV.

83.     Defendants intentionally violated Plaintiffs' rights to be free from unreasonable and warrantless searches, in violation of the Fourth Amendment, by disclosing Plaintiffs' personal information to federal immigration officials without a warrant or reasonable suspicion of a crime and by acting on behalf of law enforcement to facilitate the arrests of Plaintiffs.

84.     Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

## **FOURTH CAUSE OF ACTION**

### **Consumer Fraud in Violation of A.R.S. § 44-1522**

85.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

86.     A.R.S. § 44-1522 makes it unlawful to engage in deception, a deceptive or unfair act or practice, or misrepresentation in connection with the sale of merchandise.

87.     Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior*.

88.     Defendants violated A.R.S. § 44-1522 by misrepresenting their privacy policy and disclosing Plaintiffs' personal information to DHS and ICE agents.

89.     Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

## FIFTH CAUSE OF ACTION

### Tort for Intrusion Upon Seclusion in Violation of Arizona Law

90.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

91.     Arizona law makes it unlawful to intentionally intrude upon the seclusion or private affairs of another in a highly offensive manner.

92.     Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior*.

93.     Defendants' disclosure of Plaintiffs' personal information to federal immigration officials constitutes an invasion of Plaintiffs' privacy in violation of Arizona law.

94.     Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

**SIXTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress in Violation of Arizona Law**

95.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

96.     Arizona law makes it unlawful to engage in extreme and outrageous conduct that may cause severe emotional distress to another.

97.     Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior*.

98.     Defendants' disclosure of Plaintiffs' personal information to federal immigration officials constitutes the intentional infliction of emotional distress in violation of Arizona law.

99.     Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

**SEVENTH CAUSE OF ACTION**

**Breach of Contract in Violation of Arizona Law**

100.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

101.     Arizona law makes it unlawful for a party to a contract to engage in a material breach of a contract.

102.     Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior*.

103.    Defendants materially breached their contract with Plaintiffs, in violation of Arizona law, by disclosing guests' personal information in violation of Defendants' privacy policy, and by denying Plaintiffs the benefit of their contract with Defendants.

104.    Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.

### EIGHTH CAUSE OF ACTION

**False Imprisonment in Violation of Arizona Law**

105.    Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

106.    Arizona law makes it unlawful for a party to intentionally restrain another person to an area within the party's control without lawful authority or consent.

107.    Arizona law also makes it unlawful for a party to instigate or participate in the false imprisonment of another.

108.    Defendants are responsible for the conduct of their employees under the doctrine of *respondeat superior.*

109.    Defendants intentionally instigated or participated in the false imprisonment of Plaintiffs, in violation of Arizona law, by disclosing Plaintiffs' personal information to federal immigration officials who detained Plaintiffs

without a warrant or reasonable suspicion of a crime and by acting on behalf of law enforcement to facilitate the arrests of Plaintiffs.

110.    Plaintiffs suffered damages, including emotional distress and economic losses, in an amount to be determined at trial, and as a proximate result of Defendants' conduct.  Plaintiffs are entitled to compensation for physical discomfort or inconvenience, and for any resulting physical illness or injury to health.

## VII.   PRAYER FOR RELIEF

111.    WHEREFORE, Plaintiffs pray that this Court award:

a.    A declaratory judgment that Defendants' policy and/or practice of disclosing guests' information to DHS and ICE agents violates the United States Constitution and federal and state law;

b.    A preliminary and permanent injunction enjoining and restraining Defendants, their representatives, successors, assigns, officers, agents, servants, employees, and all other persons acting or claiming to act or, on behalf of, or in active concert or participation with Defendants, from continuing or engaging in the unlawful conduct complained of herein;

c.    Monetary damages in an amount to be determined;

d.    A civil penalty in an amount to be determined for violation of the Arizona Consumer Fraud Act;

e.  Plaintiffs' reasonable attorney's fees and costs; and

f.  Such other relief as this Court may deem just and proper.


Dated:  January 23, 2018                    MEXICAN AMERICAN LEGAL DEFENSE
                                            AND EDUCATIONAL FUND, INC.

                                            */s/ Nina Perales*
                                            Thomas A. Saenz
                                            Andrés R. Holguin-Flores
                                            Andrés J. Gallegos
                                            Nina Perales
                                            Daniel R. Ortega, Jr.
                                            *Attorneys for Plaintiffs*