Thomas A. Saenz* (Cal. Bar. No. 159430)
Andrés Holguin-Flores* (Cal. Bar No. 305860)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512
E-mail: tsaenz@maldef.org
        aholguin-flores@maldef.org
*admitted pro hac vice

Nina Perales* (Tex. Bar No. 24005046)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
110 Broadway St., Suite 300
San Antonio, TX  78205
Telephone: (210) 224-5476
E-mail: nperales@maldef.org
*admitted pro hac vice

Daniel R. Ortega, Jr. (Ariz. Bar No. 005015)
ORTEGA LAW FIRM, P.C.
361 East Coronado Rd., Suite 101
Phoenix, AZ  85004-1525
Telephone: (602) 386-4455
Facsimile: (602) 386-4480
E-mail: danny@ortegalaw.com

*Attorneys for Plaintiffs*

Don Bivens (Ariz. Bar. No. 005134)
Patricia Lee Refo (Ariz. Bar. No. 017032)
SNELL & WILMER, LLP
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, Arizona 85004-2002
Telephone: 602.382.6000
Facsimile 602.382.6070
Email: dbivens@swlaw.com
        prefo@swlaw.com

Donald B. Verrilli, Jr.* (D.C. Bar. No. 420434)
Michael B. DeSanctis* (D.C. Bar No. 460961)
Christopher M. Lynch *(D.C. Bar No. 1049152)
MUNGER, TOLLES & OLSON LLP
1155 F St. NW-- 7th Floor
Washington, DC 20004
Telephone: (202) 220-1100
Email: michael.desanctis@mto.com
*pro hac vice application forthcoming

1

2

3  Peter J. Kadzik* (D.C. Bar No. 964007)
   VENABLE LLP
4  600 Massachusetts Ave. NW
   Washington, DC 20001
5  Telephone: (202) 344-4147
   Email: PJKadzik@Venable.com
6  *pro hac vice application forthcoming

7  *Attorneys for Defendants*

8              IN THE UNITED STATES DISTRICT COURT

9                 FOR THE DISTRICT OF ARIZONA

10 | Jane V.; John A.; John E.; Jane F.; John D.; | No. 2:18-cv-00242-DGC
   | John M.; Jane N.; and John W.;               |
11 | individually and on behalf of all others     | **JOINT MOTION FOR AN ORDER**
   | similarly situated,,                          | **(1) GRANTING PRELIMINARY**
12 |                                               | **APPROVAL OF CLASS ACTION**
   |                 Plaintiff,                     | **SETTLEMENT, (2)**
13 |                                               | **CONDITIONALLY CERTIFYING**
   |           v.                                   | **SETTLEMENT CLASS, (3)**
14 |                                               | **APPOINTING CLASS**
   | Motel 6 Operating L.P., a limited             | **REPRESENTATIVES AND CLASS**
15 | partnership; G6 Hospitality LLC, a limited    | **COUNSEL, (4) APPROVING**
   | liability company, dba Motel 6; and Does      | **NOTICE PLAN, AND (5) SETTING**
16 | 1-10,                                         | **FINAL APPROVAL HEARING**
17 |                                               |
   |                 Defendant.                     |
18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

The Parties seek preliminary approval of their proposed class action settlement.[1] The settlement results from negotiations between the Parties and the use of a respected mediator, and resolves Plaintiffs' claims for significant relief.  Specifically:

- Defendants will pay (a) $50 in damages to guests at Motel 6's Operated Locations whose Guest Information was shared with Federal Immigration Authorities, up to a class-wide total of $1,000,000; (b) $1000 in damages to each Class Member questioned by Federal Immigration Authorities during his or her stay, up to a class-wide total of $1,000,000; and (c) an amount of at least $7,500 to each Class Member who was placed in immigration removal proceedings in connection with their encounter with Federal Immigration Authorities during his or her stay, up to a class-wide total of $5,600,000.

- Defendants will maintain a policy, enforceable through a two year consent decree, that they shall not share Guest Information with Federal Immigration Authorities without a judicially enforceable warrant or subpoena, except in exigent circumstances.

The proposed settlement satisfies all the criteria for preliminary approval under federal law.  Accordingly, Plaintiffs request that the Court conditionally certify the proposed Settlement Class, and the Parties request that the Court preliminarily approve the settlement, approve and direct distribution of notice in the form presented in the exhibits filed with this motion, and approve the schedule for the Final Approval Hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On January, 24, 2018, Plaintiffs filed a class action complaint in the United States District Court for the District of Arizona against Motel 6 Operating L.P. and G6 Hospitality LLC ("Defendants").  ECF. No. 1.  Plaintiffs allege that Defendants employed

---

[1] All initial-capped words refer to the terms and definitions in the settlement agreement ("Agreement").

1    a corporate policy at motels they own and operate to provide Guest Information at the

2    request of Federal Immigration Authorities.  *Id.*  Plaintiffs' putative class action complaint

3    challenges Defendants' alleged policy as discriminatory, unconstitutional, and violative of

4    state laws protecting consumers.  On May 8, 2018, Defendants filed an answer and

5    defenses to the class action complaint, denying any wrongdoing or violation of the law.

6    ECF. No. 23.

7         The Agreement is the product of vigorous, adversarial, and competent

8    representation of the Parties and substantive negotiations throughout the pendency of this

9    litigation.  The Parties began negotiations in earnest on or about March 8, 2018, when the

10   Parties met to discuss their views of the case.  Declaration of Andres Holguin-Flores

11   ("Holguin-Flores Decl.") ¶ 6.  On June 15, 2018, the Parties engaged in a day-long

12   mediation with Martin F. Scheinman, Esq., an independent and respected neutral, as a

13   professional mediator, which resulted in a tentative settlement.  Agreement, attached as

14   Exhibit A to [Proposed] Order, § IV.C.  No trial date has been set and the Parties have not

15   appeared for a Case Management Conference.

16        Plaintiffs' counsel believe they could make a strong showing of why they should

17   succeed on the merits of their claims.  Based on diligent effort, Plaintiffs' counsel has been

18   aware of the attendant strengths, risks, and uncertainties of their case during the course of

19   this litigation and settlement negotiations.  Holguin-Flores Decl. ¶ 8.  Defendants, on the

20   other hand, vigorously deny any wrongdoing or liability and contend that they would be

21   wholly successful in defeating Plaintiffs' claims at or before trial.  Defendants deny that

22   they had or employed a policy and/or practice that was discriminatory, unconstitutional or

23   violative of any state laws.  Agreement § XIV.A.

24        While both sides robustly contest the issues, the Parties appreciate the costs and

25   uncertainty attendant to any litigation and have agreed to the proposed Agreement.  *Id.*

26   Plaintiffs' counsel entered into the Agreement after considering, among other things: (i)

27   the substantial benefits to Class Members under the terms of the settlement; (ii) the

28   uncertainty and expense of being able to prevail through trial and on appeal; (iii) the

attendant risks, difficulties, and delays inherent in complex actions such as this; and (iv) the desirability of consummating this settlement promptly to provide substantive relief to Class Members without unnecessary delay and expense.  Holguin-Flores Decl. ¶ 8.

## III.    SUMMARY OF THE SETTLEMENT

### A.    Proposed Class Definitions and Monetary Relief

For purposes of equitable relief and monetary damages under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), respectively, the classes represented by Plaintiffs and the monetary damages they will be provided are as follows:

- A Primary Class, consisting of all persons who stayed at an Operated Location between February 1, 2017, and November 2, 2018, and whose Guest Information was provided to Federal Immigration Authorities by Defendants' employees, except those who file a timely request to opt-out of the monetary damages provisions. Defendants will pay $50 to each member of the Primary Class who is not also a member of either Class 2 or Class 3 who makes a legitimate claim, up to a class-wide total of $1,000,000.

- Class 2, consisting of all persons who are not members of Class 3 who were questioned and/or interrogated by Federal Immigration Authorities at an Operated Location as a result of a Primary Class member's Guest Information being provided to Federal Immigration Authorities, except those who file a timely request to opt-out of the monetary damages provisions. Defendants will pay $1,000 to each member of Class 2 who makes a legitimate claim, up to a class-wide total of $1,000,000.

- Class 3, consisting of all persons who were placed in immigration removal proceedings in connection with their encounter with Federal Immigration Authorities at an Operated Location as a result of a Primary Class member's Guest Information being provided to Federal Immigration Authorities, except those who file a timely request to opt-out of the monetary damages provisions.  Defendants will pay each class member of Class 3 who makes a

1
2
3                   legitimate claim an amount not less than $7,500, to be determined by the
                  claims administrator in consultation with Class Counsel, up to a class-wide
                  total of $5,600,000.

4 Agreement § VII.A.1 & XII.A.1-3. Claims will be evaluated as to membership in the
5 Primary Class based on whether it can reasonably be determined from Defendants' records
6 and the information provided in the claim form that the claimant's Guest Information was
7 provided to Federal Immigration Authorities.  *Id.* § XII.N.1.  Membership in Class 2 or
8 Class 3 will be based on whether it can reasonably be determined from Defendants'
9 records and information provided in the claim form that their encounter with Federal
10 Immigration Authorities at an Operated Location was a result of a Primary Class
11 Member's Guest Information being provided to Federal Immigration Authorities.  *Id.* at §
12 XII.N.3.

13       Any unclaimed funds dedicated to Classes 2 and 3 remaining in the Settlement
14 Account will be included in a *cy pres* fund to be distributed to a non-profit organization or
15 organizations approved by the Court.  *Id.* at § XII.P.  The Parties have agreed to propose
16 Florence Immigrant & Refugee Rights Project, Northwest Immigrant Rights Project,
17 National Immigrant Justice Center, and TheDream.US, allocating 40% to each of the
18 former two and 10% to each of the latter two.  Holguin-Flores Decl. ¶ 9.

19       **B.**      **Equitable Relief**
20            **a.  Injunctive Relief**
21       Defendants agree to injunctive relief whereby they institute, implement, and
22 maintain the following practices and procedures ("the Policy"):  <u>First</u>, Defendants must
23 establish a 24-Hour Hotline to assist their employees when the employees receive any
24 request for Guest Information from Federal Immigration Authorities.  Agreement §
25 X.A.1.a.  <u>Second</u>, Defendants must not share Guest Information with Federal Immigration
26 Authorities unless they provide a judicially enforceable warrant or subpoena, or if it is
27 necessary to prevent a significant crime, or where there is a credible reason to believe that
28 a guest, employee or other individual is in immediate danger and is at risk of serious

bodily injury or death.  *Id.* at § X.A.1.b.i.  <u>Third</u>, Defendants must establish a brand standard prohibiting Franchised Properties from providing Guest Information to Federal Immigration Authorities, except in the same exigent circumstances described above.  *Id.* at § X.A.1.b.v.  <u>Fourth</u>, all warrants or subpoenas presented by Federal Immigration Authorities must be sent to the Defendants' legal department or other individuals who have been trained to comply with the Policy.  *Id.* at § X.A.1.b.ii.  <u>Fifth</u>, Defendants must create an online mechanism for Guests to report when they believe that the Policy has been violated in any manner.  *Id.* at § X.A.1.b.iv.

Defendants will also train employees at Operated Locations who have the ability to make a guest list available to understand their responsibilities with regard to the above Policy.  *Id.* at § X.A.2.ii.  The Agreement provides that this equitable relief will be entered as a two-year consent decree, providing the Court with jurisdiction to enter all orders necessary to implement the relief provided.  *Id.* at §§ VI, VII.

**b.  Dispute Resolution and Enforcement Procedures**

The Parties have agreed that Martin F. Scheinman, Esq., is to be appointed as Settlement Administrator with authority to resolve all disputes arising under the Agreement.  *Id.* at § X.B.1-2.  The Parties have also agreed to extensive dispute resolution procedures.  *See generally id.* at § X.B.3-7.

**C.    Costs of Notice and Attorneys' Fees**

Defendants agree to pay the costs of notice to class members and claims administration, not to exceed $1,000,000.00.  Arden Claims Service will conduct class notice and claims administration in consultation with the Parties, and will invoice Defendants directly for its fees and costs.  Agreement § XII.A.5-6.  Defendants have further agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs in the amount of $300,000.00.  *Id.* at §XIII.A.

IV.     **THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS[2]**

A proposed class may be certified for settlement purposes if it satisfies Federal Rule of Civil Procedure 23(a), "namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In consumer class actions, doubts on certifying a class should be resolved in favor of certification. *See City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. 2002).

Additional requirements for class settlements will take effect under amendments to Rule 23 effective December 1, 2018.  Under the amendments, notice must be directed to class members who would be bound by the proposal if approval of the settlement and certification of the class are shown to be likely.  Fed. R. Civ. P. 23(e)(1)(B) (Dec. 2018).  The court must consider whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate," and the proposal treats class members equitably relative to each other. *Id.* 23(e)(2).  The settlement here meets the requirements of both the current and amended versions of the rule.

**A.     The Proposed Class Satisfies Rule 23(a)**

**1.     Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  Generally, classes of forty or more are sufficiently numerous. *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964).  Defendants stipulate that the Primary Class contains thousands of members.  Given the number of requests that Federal Immigration Authorities made for Guest Information it would be reasonable to conclude

---

[2] Defendants submit that if this case were litigated, they would defeat class certification, and do not join this section of the brief or any part of this motion insofar as it argues that the law or facts warrant certification, except with respect to their stipulation as to the size of the Primary Class.  Solely for purposes of settlement, however, they do not oppose the motion for conditional certification and Part IV of this Memorandum.

1    that this element is satisfied for Class 2 and Class 3 as well.[3]  *See Newberg on Class*

2    *Actions* § 3.3 (4th ed.2002) (where "the exact size of the class is unknown, but general

3    knowledge and common sense indicate that it is large, the numerosity requirement is

4    satisfied").  Therefore, the classes are sufficiently numerous such that joinder of all

5    individual claimants would be impracticable.

6                              2.    **Commonality**

7           Rule 23(a)(2) requires "questions of law or fact common to the class."  "All

8    questions of fact and law need not be common," however:  "The existence of shared legal

9    issues with divergent factual predicates is sufficient, as is a common core of salient facts

10   coupled with disparate legal remedies…."  *Hanlon*, 150 F.3d at 1019.  "In the Ninth

11   Circuit, the requirements of Rule 23(a)(2) are construed 'permissively.'"  *Quintero v.*

12   *Mulberry Thai Silks, Inc.*, No. C 08-02294 MHP, 2008 WL 4666395, at *3 (N.D. Cal. Oct.

13   22, 2008) (quoting *Hanlon*, 150 F.3d at 1019).  In addition, all class members must "'have

14   suffered the same injury.'"  *Wal-Mart Store, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)

15   (internal citation omitted).  All class members here are (1) individuals whose Guest

16   Information was provided to Federal Immigration Authorities in the form of guest lists that

17   did not differentiate between or categorize guests or (2) individuals who were interrogated

18   and/or placed in immigration removal proceedings as a result of Guest Information being

19   provided to Federal Immigration Authorities.  *See supra* Part III.A; *see generally* ECF No. 23

20   at 1-2.  Class Members and subclass members therefore share a common injury and set of

21   legal issues.  *See id.*

22                              3.    **Typicality**

23          Rule 23(a)(3) sets a "permissive standard"; named plaintiffs' claims are typical if

24   they are "reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d

25   at 1020.  Representative plaintiffs must also be a member of the class they seek to

26   represent.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  Here, the proposed

27

28   _____

[3] The Parties cannot estimate the number of members of Class 2 or Class 3.

1   Class Representatives have claims typical to the Settlement Class, because Defendants'

2   records indicate that six are members of the Primary Class (all except Jane F. and Jane N.);

3   in addition, one is a member of Class 2 (Jane F.), and seven are members of Class 3 (all

4   except Jane F.).  *See* Compl. ¶¶ 17-43.

5                    4.    **Adequacy of Representation**

6          Rule 23(a)(4) requires that Class Representatives "fairly and adequately protect the

7   interests of the class."  This requires resolving two issues: (1) whether the Class

8   Representative has interests in conflict with the proposed Class; and (2) the qualifications

9   and competency of proposed class counsel.  *In re Live Concert Antitrust Litig.,* 247 F.R.D.

10  98, 118 (C.D. Cal. 2007).  Regarding qualifications of counsel, the Court should analyze

11  "(i) the work counsel has done in identifying or investigating potential claims[;]… (ii)

12  counsel's experience in handling class actions, other complex litigation, and the types of

13  claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

14  resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

15         Plaintiffs do not have interests that conflict with the proposed Settlement Classes.

16  Plaintiffs allege that they, like all Class Members, contracted for hospitality services and

17  had their Guest Information disclosed to Federal Immigration Authorities or were

18  interrogated and/or placed in immigration removal proceedings as a result of Guest

19  Information being provided to Federal Immigration Authorities.  Compl. ¶¶ 46-58, 65.

20  Plaintiffs' counsel is amply qualified, as is evidenced by their thorough investigation and

21  detailed Complaint and their extensive work in successfully mediating and negotiating the

22  proposed Settlement. Holguin-Flores Decl. ¶¶ 3, 6-10, 12-21.  Plaintiffs' counsel has

23  numerous years' experience and demonstrated success in bringing class action claims.

24  They will more than adequately protect Class Members' interests.  Holguin-Flores Decl. ¶¶

25  12-21.  Plaintiffs respectfully request the Court order that Plaintiffs' counsel shall be Class

26  Counsel pursuant to Rule 23(g)(1) and designate the Plaintiffs as Class Representatives for

27  their respective classes (see *supra* Part IV.A.3).

28

**B.      The Proposed Class Also Satisfies Rule 23(b)(2)**

Certification under Rule 23(b)(2) is appropriate where defendants have acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Here, all Class Members are individuals whose Guest Information was provided to Federal Immigration Authorities in the form of guest lists that did not differentiate between or categorize guests, or individuals who were interrogated and/or placed in removal proceedings as a result of Guest Information having been provided to Federal Immigration Authorities. *Supra* Part III.A.  The proposed injunctive relief prohibits Defendants from providing such information to Federal Immigration Authorities, and establishes additional policies and procedures as well as a mechanism for receiving and processing guest complaints. *Supra* Part III.B.

Plaintiffs' request for monetary relief in this case is "incidental" to the Complaint's primary claims for injunctive relief, as Plaintiffs' primary objective is the injunctive relief establishing specific policies to ensure the conduct at issue will not recur. *Dukes*, 564 U.S. at 360; *see* Agreement § X.A.  The monetary damages are secondary in that the compensation flows directly out of Defendants' conduct that affected all class members. *See Dukes*, 564 U.S. at 364-65.  The Court, therefore, should conditionally certify the Settlement Class under Rule 23(b)(2) for settlement purposes.

**C.      The Proposed Class Also Meets the Requirements of Rule 23(b)(3)**

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.  Certification under Rule 23(b)(3) requires: (A) questions of law or fact common to the class predominate over questions affecting only individual members; and (B) a class action is superior to resolution by other available means.  Fed. R. Civ. P. 23(b)(3); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

The predominance test is satisfied when common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single

adjudication." *Hanlon*, 150 F.3d at 1022.  Here, Plaintiffs allege that Class Members are entitled to the same legal remedies, premised on the same alleged wrongdoing.  Further, damages can be measured with a common methodology that is directly connected to the alleged wrong as described in the Agreement.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013).

Class treatment is also the superior means to adjudicate Plaintiffs' claims.  When analyzing superiority, the court should consider: "(1) the interest of members of the class in individually controlling the prosecution … of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by … members of the class; and (3) the desirability … of concentrating the litigation … in the particular forum." *True*, 749 F. Supp. 2d at 1062.[4]  There are currently no other, duplicative class action cases here, but resolving any similar claims in one proceeding will preserve efficiency for the parties and judicial economy.  It is neither economically feasible, nor judicially efficient, for thousands of potential Class Members to pursue their small claims against Defendants on an individual basis, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-339 (1980), and continued litigation without class certification could potentially "dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

## V.    THE CRITERIA FOR PRELIMINARY APPROVAL ARE SATISFIED

### A.    Standard of Review

It is well-settled that the law strongly "favors settlements… where complex class action litigation is concerned."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008).  Preliminary approval of a class settlement "is committed to the sound discretion of the trial judge," but courts must give "proper deference to the private consensual decision of the parties," because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud[,] …

---

[4] A fourth factor—the difficulties of managing the class action—is not considered when certification is used only for purposes of settlement.  *Id.* at n.12.

overreaching[,] … or collusion," and is fair, reasonable, and adequate.  *Hanlon*, 150 F.3d at 1026-27; *see also Knight v. Red Door Salons, Inc*., No. 08-1520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) ("The recommendations of Plaintiff's counsel should be given a presumption of reasonableness.") (citation and quotations omitted).

At the preliminary approval stage, a final analysis of the settlement's merits is not required; "[p]reliminary approval of a settlement and notice to the proposed class is appropriate [i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval[.]"  *Vasquez v. Coast Valley Roofing, Inc*., 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation and internal quotations omitted); *accord Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (Campbell, J.); *see also* Fed R. Civ. P. 23(e)(2)(B)-(D) (Dec. 2018).  All of the above factors are amply satisfied here.

### A.     Arm's Length Negotiations and Settlement

If the terms of the settlement are fair, courts generally assume the negotiations were proper.  *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).  As set forth below, there can be no question that the terms are fair.  The Parties' negotiations were also vigorous and contested, with both parties represented by experienced counsel.  The Parties engaged in a series of informal, arm's length discussions over a period of months before enlisting the services of an independent, professional mediator.  Holguin-Flores Decl. ¶¶ 6-7.  A full-day mediation resulted in a tentative settlement.  Agreement § IV.C.  These lengthy negotiations before a third party demonstrate that the Settlement was anything but collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator … confirms that the settlement is non-collusive.").

### B.     No Obvious Deficiencies or Preferential Treatment

1    The Agreement provides relief to all Class Members who Defendants' records show

2    had their Guest Information disclosed to Federal Immigration Authorities, and provides

3    additional relief to Class Members who were questioned by Federal Immigration

4    Authorities as a result of that disclosure.  It provides for even more relief to those placed in

5    removal proceedings in connection as a result of that disclosure.  Any persons who qualify

6    for membership in Classes 2 and 3 are entitled to the same relief as the Class

7    Representatives who are also within their subclass.  Accordingly, the Agreement does not

8    give preferential treatment to the Class Representatives.  *See* Fed. R. Civ. P. 23(e)(2)(D)

9    (Dec. 2018).

10        **C.      Fair, Reasonable and Adequate Proposed Settlement**

11       Under Federal Rule of Civil Procedure 23(e), the Court must determine whether the

12   proposed settlement is "fundamentally fair, adequate, and reasonable."  *Class Plaintiffs v.*

13   *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The Ninth Circuit has established several

14   factors that should be weighed when assessing whether a proposed settlement is fair,

15   adequate and reasonable: (1) the strength of Plaintiff's case; (2) the risk, expense,

16   complexity, and likely duration of further litigation; (3) the risk of maintaining class action

17   status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery

18   completed and the stage of the proceedings; (6) the experience and views of counsel; and

19   (7) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at

20   1026.[5]  "Given that some of these factors cannot be fully assessed until the court conducts

21   its fairness hearing, a full fairness analysis is unnecessary at [the preliminary approval]

22   stage[.]" *West v. Circle K Stores*, No. CIV.S-04-0438 WBS GGH, 2006 WL 1652598, at

23   *9 (E.D. Cal. June 13, 2006) (internal quotations and citations omitted).  Although though

24   these factors govern final approval, their review demonstrates that the Agreement merits

25   preliminary approval.

26   _____

27   [5] *See also* Fed. R. Civ. P. 23(e)(2)(C)&(D) (Dec. 2018).  An additional factor is any
     agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C)(4)&(e)(3)

28   (Dec. 2018).  There is no agreement between the Parties not included in the materials filed
     with this motion.

### 1.     The Strength of Plaintiffs' Case

"The Court cannot and need not determine the merits of the contested … issues at this stage, and to the extent courts assess this factor, it is to determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case." *Misra v. Decision One Mortg. Co.*, No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009) (internal citation and quotations omitted). Plaintiffs' counsel conducted a thorough investigation and engaged in intensive settlement discussions.  As a result, they negotiated with ample knowledge of the strengths and weaknesses of their case.  Holguin-Flores Decl. ¶ 8.  While Plaintiffs are confident in the strength of their claims, they recognize that Defendants have factual and legal defenses that, if successful, would defeat or substantially impair the value of their claims.  *See, e.g.*, ECF. No. 23.  "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery…." *In re Nvidia Derivs. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

### 2.     Expense of Litigation; Risk of Maintaining Class Action Status

Plaintiffs' claims involve complex issues under the United States Constitution as well as state law.  The costs and risks associated with continuing to litigate this action would require extensive resources and court time, including expert testimony and *Daubert* motions.  Moreover, a trial involving the claims of potentially thousands of potential class members who stayed at numerous, geographically dispersed locations would require the presentation of dozens of witnesses at a minimum.  Any result would likely be appealed. In contrast, the proposed Agreement will yield a certain, substantial, and prompt recovery for the class.  "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement…." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (Dec. 2018).

While Plaintiffs believe class treatment is appropriate, there is a genuine risk that Plaintiffs may not be able to maintain class action status through trial.  If the settlement is not approved, Defendants will vigorously oppose class certification, including potentially

1   seeking decertification or appealing the certification.  Settlement eliminates these risks and

2   "there is much less risk of anyone who may have actually been injured going away empty-

3   handed."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d, 1036, 1041-42 (N.D. Cal. 2007).

4   ### 3.   Adequacy and Amount of Recovery

5       The Agreement provides generous monetary relief for Class Members and achieves

6   everything the Plaintiffs sought in their putative class action Complaint.  Class Members

7   who had *no* direct interaction with Federal Immigration Authorities during their stay at

8   Motel 6 will receive $50 (which is within the range many Motel 6 rooms cost for a night),

9   while Class Members who were questioned by Federal Immigration Authorities during

10  their stay at Motel 6 but were not subsequently placed in removal proceedings will receive

11  $1,000—far more than the value of their room for what could have been no more than a

12  relatively short period of inconvenience.  Agreement § XII.A.1-2.  Finally, those who were

13  placed in legal proceedings and forced to defend their presence in the United States will

14  receive a minimum of $7,500.  *Id.* at § XII.A.3.  These payments will be achieved without

15  the delay or expense associated with further litigation.  Further, any unclaimed funds

16  allocated to the groups that directly interacted with Federal Immigration Authorities will

17  be donated to organizations who, among other things, provide legal representation to

18  immigrants forced to defend their presence in the United States.  This monetary relief

19  provides a significant recovery to the Settlement Class.[6]

20      The monetary awards will be distributed to Class Members who make claims

21  determined to be valid by the Claims Administrator based on criteria identified *supra* Part

22  III.A.  The Claims Administrator shall request additional information where claim forms

23  are not complete, and claimants shall be able to appeal a denial of their claim to the Claims

24

25  _____

26  [6] Further, the injunctive relief provided for in the Settlement provides significant additional
    value, as it will prevent the alleged practices that Plaintiffs claim harmed consumers from
27  reoccurring.  *See Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at
    *4 (D. Nev. Oct. 28, 2010) (approving settlement for injunctive relief that "achieve[d] the
28  goals of the lawsuit").

1   Administrator.  These procedures ensure that funds will be broadly distributed among

2   Class Members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) (Dec. 2018).

3          Finally, the proposed attorneys' fees award is miniscule in relation to the award to

4   the class, which is more than twenty times higher.  The award will not come out of funds

5   allocated to the class, and will not be paid until after this Court has finally approved the

6   proposal and any potential appeals are concluded.  *See* Fed. R. Civ. P. 23()(2)(C)(iii) (Dec

7   2018).

8                    **4.       The Stage of the Proceedings**

9          "[I]n the context of class action settlements, formal discovery is not … necessary …

10  where the parties have sufficient information to make an informed decision about

11  settlement."  *Linney v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

12  (citation and internal quotations omitted).  This is especially true "where there has been

13  sufficient information sharing and cooperation in providing access to necessary data…."

14  *Misra*, 2009 WL 4581276, at *8.  The Parties engaged in significant substantive

15  discussions over a period of approximately four months before reaching a tentative

16  settlement.  Holguin-Flores Decl. ¶¶6-7, 9.  These discussions followed extensive

17  investigation by Plaintiffs' counsel, and involved the Parties stipulating to key facts and

18  figures critical to reaching settlement.  *Id.* at ¶¶ 6-7.  Plaintiffs' counsel had sufficient

19  information to make an informed decision about the terms of the Agreement.

20                   **5.       The Experience and Views of Counsel**

21         "Parties represented by competent counsel are better positioned than courts to

22  produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re*

23  *Pacific Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the Court should not

24  without good cause substitute its judgment for [counsel's]."  *Boyd v. Bechtel Corp.*, 485 F.

25  Supp. 610, 622 (N.D. Cal. 1979).  Here, "[i]n addition to being familiar with the present

26  dispute, Plaintiff[s'] counsel has considerable expertise in . . . class action litigation."

27  *Knight*, 2009 WL 248367, at *4.  Both MALDEF and the Ortega Law Firm have

28  considerable experience litigating federal class actions, including before this Court, *e.g.,*

1   *Valenzuela v. Ducey*, No. CV-16-03072-PHX-DGC, 2018 WL 3069464 (D. Ariz. June 21,

2   2018), and the Parties agreed to the proposed Agreement after vigorous negotiations on the

3   terms and with the benefit of an experienced mediator.  *Supra* Part II.  Simply stated, there

4   is nothing to counter the presumption that counsel's recommendation is reasonable.

5           **D.      The Proposed Form of Class Notice and Notice Plan Satisfy Rule 23**

6           If the Court's *prima facie* review of the relief offered and notice provided by the

7   Agreement are fair and adequate, it should order that notice be sent to the class.  *Manual*

8   *for Complex Litig.*, *Fourth*, § 21.632 at 321.  Notice of a class action settlement must be

9   "the best notice that is practicable under the circumstances, including individual notice to

10  all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

11  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient

12  detail to alert those with adverse viewpoints to investigate and … be heard."  *Churchill*

13  *Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and

14  citation omitted).

15          The proposed notice plan constitutes the best notice practicable.  *See* Agreement §

16  XII.D.  The notices are neutral, and written in an easy-to-understand clear language in both

17  English and Spanish, giving potential class members (1) basic information about the

18  lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of

19  how Class Members can obtain those benefits; (4) an explanation of how Class Members

20  can exercise their right to opt-out or object to the settlement; (5) an explanation that any

21  claims against Defendants that could have been litigated in this action will be released if

22  the Class Member does not opt out; (6) the names of counsel for the Class and information

23  regarding attorney's fees; (7) the fairness hearing date; and (8) the settlement website

24  where additional information can be obtained.  *See* [Proposed] Order Exs. B-E.

25          The notice plan involves direct mailings to the individuals identified by Defendants'

26  records as potential Class Members.  Agreement § XII.C.1.  Notice will also be provided

27  in English and Spanish on MALDEF's Facebook and Twitter accounts.  *Id.* at § XII.C.2.

28  Further information will be available on a website established by the Claims

1   Administrator.  Settlement Class members will have 60 days from mailing to opt out or

2   object and an additional 15 days after submitting opt out requests to rescind those requests.

3   *See id.* at § XII.F.  This is sufficient time to give the Settlement Class members the

4   opportunity to comment on and take part in the settlement.  *Cf. Torrisi v. Tucson Elec.*

5   *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (approving class notice sent thirty-one days

6   before objections deadline and forty-five days before final approval hearing).

7       The Parties propose the following timeline:

| Event | Date |
|-------|------|
| Preliminary Approval Granted | Day 1 |
| Class Settlement Website Activated<br><br>Parties Provide Lists of Potential Class Members to Claims Administrators | Day 20 |
| Notice is Posted to Facebook and Twitter | Day 30 |
| Notice is Mailed | Day 60 |
| Last Day to Postmark Opt Out or Objection | 30 days before Final Approval Hearing [Preferably Day 120] |
| Parties to File Motion for Final Approval | 21 days before Final Approval Hearing [Preferably Day 129] |
| Last Day to Submit a Claim and to Rescind Opt Out | As set by the Court [Preferably Day 135] |
| Parties to File Brief Replying to Objections<br><br>Objectors File Notice of Intent to Appear | 7 days before Final Approval Hearing [Preferably Day 143] |
| Final Approval Hearing | As set by the Court [preferably Day 150] |
| Completion of All Review of Claims and Appeals by Claims Administrator | Last Day to Submit a Claim +171 [Preferably Day 306] |

      Accordingly, the Parties request the Court schedule the Final Approval Hearing <u>150</u>

<u>days</u> after the order granting preliminary approval, or as soon thereafter as practical.

**VI.   CONCLUSION**

      For the foregoing reasons, the Parties respectfully request the Court grant the relief

requested herein.

DATED this 2nd day of November, 2018.

MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND, INC.

By: /s/ Andrés Holguin-Flores
    Thomas A. Saenz
    Andrés Holguin-Flores
    Nina Perales
    Daniel R. Ortega, Jr.

*Attorneys for Plaintiffs*

SNELL & WILMER, LLP

By: /s/ Patricia Lee Refo with permission
    Don Bivens
    Patricia Lee Refo

MUNGER, TOLLES & OLSON, LLP

    Donald B. Verrilli, Jr.
    Michael B. DeSanctis
    Christopher M. Lynch

VENABLE LLP

    Peter J. Kadzik

*Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on November 2, 2018, I electronically transmitted the attached

3  documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

4  of Electronic Filing to all ECF registrants in this matter.

5

6  DATED: August 31, 2018

7                                                                                    /s/ Andres Holguin-Flores

8                                                      MEXICAN AMERICAN LEGAL DEFENSE

9                                                                      AND EDUCATIONAL FUND

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28