Donald W. Bivens (#005134)
Patricia L. Refo (#017032)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: dbivens@swlaw.com
        prefo@swlaw.com
*Attorneys for Defendants*

*Additional attorneys on next page*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane V.; John A.; John E.; Jane F.; John D.; John M.; Jane N.; and John W.; individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>Motel 6 Operating L.P., a limited partnership; G6 Hospitality LLC, a limited liability company, dba Motel 6; and Does 1-10,<br><br>            Defendants. | No. 2:18-cv-00242-DGC<br><br>**JOINT MOTION FOR AN ORDER (1) GRANTING FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT, (2) CERTIFYING THE SETTLEMENT CLASS, (3) ENTERING A CONSENT DECREE TO GOVERN INJUNCTIVE RELIEF, AND (4) APPROVING ATTORNEYS' FEES AND COSTS** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000



Thomas A. Saenz* (Cal. Bar. No. 159430)
Andrés Holguin-Flores* (Cal. Bar No. 305860)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
634 South Spring Street, 11th Floor
Los Angeles, California 90014
Telephone: (213) 629-2512
E-mail: tsaenz@maldef.org
aholguin-flores@maldef.org
*admitted pro hac vice

Nina Perales* (Tex. Bar No. 24005046)
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
110 Broadway St., Suite 300
San Antonio, TX  78205
Telephone: (210) 224-5476
E-mail: nperales@maldef.org
*admitted pro hac vice

Daniel R. Ortega, Jr. (Ariz. Bar No. 005015)
ORTEGA LAW FIRM, P.C.
361 East Coronado Rd., Suite 101
Phoenix, AZ  85004-1525
Telephone: (602) 386-4455
Facsimile: (602) 386-4480
E-mail: danny@ortegalaw.com

*Attorneys for Plaintiffs*

Donald B. Verrilli, Jr.* (D.C. Bar. No. 420434)
MUNGER, TOLLES & OLSON LLP
1155 F St. NW-- 7th Floor
Washington, DC 20004
Telephone: (202) 220-1100
Email: michael.desanctis@mto.com
*admitted pro hac vice

Peter J. Kadzik* (D.C. Bar No. 964007)
VENABLE LLP
600 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 344-4147
Email: PJKadzik@Venable.com
* admitted pro hac vice

Stacie E Tobin* (MD Bar No. 11331)
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD  21201
Telephone: (410) 244-7878
Email:  SETobin@venable.com
* admitted pro hac vice

*Attorneys for Defendants*

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## I.    INTRODUCTION

By Order entered on August 2, 2019 (the "Preliminary Approval Order"), this Court: 1) granted preliminary approval of a proposed class action settlement memorialized in a Second Amended Settlement Agreement and First Addendum; 2) conditionally certified the Settlement Class and the Injunctive Relief Class; 3) appointed Class Representatives and Class Counsel; 4) approved the Notice Plan; 5) appointed a Claims Administrator and a Settlement Administrator; and 6) scheduled a Final Approval Hearing for February 7, 2020.[1]

Since entry of the Preliminary Approval Order, the Claims Administrator ("ACS") and the Parties have delivered notice of the proposed settlement to Class Members via mail, social media, a widely-distributed press release, and a settlement website, www.motel6settlement.com (the "Settlement Website").    Thereafter, 2061 persons submitted claims for monetary relief to ACS.  Ferrante Decl. ¶ 11.  Of the 2061 claims submitted, ACS has verified 2018 of them.  *Id.*  It deemed 85 claims to be ineligible, and 43 to be deficient but subject to cure.  *Id.*; Ex. 5, Ferrante Decl.  Not one Class Member opted out of the class or objected to the settlement.[2]

In the Parties' Joint Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion"), they asked the Court to certify conditionally two monetary classes of Plaintiffs, defined therein as the Primary Class and Class 2.  The chief distinction between the two classes was whether the claimant had a been a Registered Guest of a Motel 6 Location whose Guest Information had presumably been disclosed to  Federal Immigration Authorities (Primary Class), or a non-registered Guest of a Motel 6 who suffered an interaction with Federal Immigration Authorities as the result of the disclosure of someone else's Guest Information (Class 2).  Both classes would be eligible to recover damages

---

[1] All initial-capped words refer to the terms and definitions in the Third Amended Settlement Agreement, except as stated herein.  *See* Exhibit A to Proposed Order.

[2] Of the claims submitted, there were 31 claims that, though otherwise valid, were submitted after the December 31 claims deadline but by January 14.  ACS has determined—with the Parties' consent—to accept those claims as timely. The total value of those claims is $2,175, and therefore they have a *de minimis* impact on the total amount to be paid.

stemming from having to defend their immigration status, but only Registered Guests would recover a specified amount ($75) for the disclosure of their Guest Information.

Now that the claims submission process is complete and ACS has produced its Final Claims Report, Ex. 5, Ferrante Decl., the Parties realize that there are vastly more claimants in the previously defined Primary Class than in Class 2. Indeed, there are 1,966 members of the Primary Class and only 10 members of Class 2 (not counting persons who submitted claims that arguably would have been Class 2 claims but were deemed ineligible).[3] To address the lower-than-expected number of Class 2 claims, and in an effort to ensure that the purposes of the Agreement are realized and that valid claimants are paid, the Parties have approved a Third Amended Settlement Agreement (the "Agreement"), which modifies the prior agreement only by merging the Primary Class and Class 2 and creating one monetary relief class, the Settlement Class.[4] The Agreement reflecting this proposal is attached to the Proposed Order as Exhibit A. For all the reasons stated, the Parties request that this Court grant final approval of the Agreement as amended and certify the Settlement Class.

If the Court grants final approval of the proposed Agreement, as amended, the Administrator would make payments to the Settlement Class of at least $1,906,225 (for those already verified claims) and as much as $5,468,975 (including the currently deficient claims).[5] Merging the originally defined Primary Class and Class 2 has no consequence on

---

[3]Between December 13, 2019 and January 10, 2020, ACS issued deficiency notices to 43 claimants (37 in the Primary Class and 6 in Class 2), who have 45 days to cure. Thus, the final determination of those claims will be made on or before February 24, 2020. For present purposes, those arguably deficient claims are included in the 1,976 claims discussed herein.

[4]The origin of separate classes (the Primary Class and Class 2) is an artifact of the Parties' original settlement agreement, where the Parties had agreed to class-specific caps on monetary damages. *See* ECF No. 33-1, Settlement Agreement § XII.A. (Nov. 2, 2018). The Parties eliminated the class-specific caps in its Second Amended Settlement and First Addendum, ECF No. 70-1, Second Amended Settlement Agreement § XII.B (July 31, 2019), and thus the merger of the classes would have no adverse impact on claimants.

[5]Class Counsel will reach out to any claimant that received a deficiency notice and will seek to expeditiously cure the deficiency prior to the hearing on February 7, 2020. Holguin-Flores Decl. ¶ 17.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

ACS's distribution of funds to the claimants. Of the remaining unclaimed funds, Section XII.B.3 of the Agreement provides that $1,500,000 is to be returned to Defendants, and the remainder is to be paid, subject to Court approval, to the designated *cy pres* recipients in the percentage amounts designated in Section XII.B.4 of the Agreement.

Because the proposed Agreement satisfies all criteria for final approval, the Parties now jointly request an order: 1) granting final approval of the proposed settlement memorialized in the Third Amended Settlement Agreement; 2) certifying the Settlement Class and the Injunctive Relief Class; 3) entering a consent decree to govern the equitable relief portion of the Agreement; 4) authorizing ACS to distribute the Settlement Amount in accordance with the Agreement; and 5) authorizing the payment of attorneys' fees and costs.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[6]

### A.   Factual Background

In late 2017, press reports stated that certain Motel 6 properties in Phoenix were regularly providing guest lists to Federal Immigration Authorities. *See* Ex. 1, VanBeest Decl. at ¶¶ 7–8, Preliminary Approval Motion. Defendants determined that Motel 6 likely provided guest lists to Federal Immigration Authorities on a recurring basis at eight properties operated by Defendants—two in Arizona and six in Washington state. *Id.* ¶¶ 9–10. Federal Immigration Authorities have never disclosed the number of persons with whom they interacted as a result of the guest lists disclosed.

### B.   Procedural Background

On January 24, 2018, Plaintiffs filed the complaint in this action alleging that Defendants employed a corporate policy to provide Guest Information on demand to Federal Immigration Authorities. ECF No. 1. Plaintiffs challenge Defendants' alleged policy as discriminatory, unconstitutional, and violative of state laws protecting consumers.

[6]To avoid unnecessary repetition, the Parties reference and incorporate their (Second) Joint Motion for an Order Granting Preliminary Approval of Amended Class Action Settlement, ECF No. 58, and set forth herein a shortened version of key facts, authorities and discussion from that paper to assist the Court.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   *Id.*  On June 5, 2019, Plaintiffs filed, with Defendants' consent, an Amended Class Action
2   Complaint for Declaratory Injunctive Relief (the "Amended Complaint").  ECF No. 54.

3   The Parties began vigorous, adversarial negotiations to resolve this case on or about
4   March 8, 2018.  Preliminary Approval Motion at 3.  On June 15, 2018, the Parties engaged
5   in a day-long mediation with Martin F. Scheinman, Esq., an independent and respected
6   neutral, which resulted in a tentative settlement.  Agreement § IV.C.  After filing the Joint
7   Motion for Preliminary Approval of their original proposed settlement agreement on
8   November 2, 2018, the Parties had a hearing with the Court in which the Court requested
9   additional information about the settlement. *Id.* §§ IV.E–F; ECF No. 39.  After a telephonic
10  hearing with the Court on March 27, 2019, the Parties engaged in an additional mediation
11  on April 3, 2019.  Agreement § IV.G.  The Parties filed a second Joint Motion for
12  Preliminary Approval on June 28, 2019.  ECF No. 58.

13  On July 19, 2019, the Court held a hearing and raised additional questions regarding
14  the Parties' amended settlement.  The Parties filed a proposed order and exhibits revised
15  per the Court's instructions on July 26, 2019.  ECF No. 67.  The Parties addressed two
16  additional questions raised by the Court on July 31, 2019 and August 1, 2019.  *See* ECF
17  Nos. 70 and 73.  On August 2, 2019, the Court entered the Preliminary Approval Order.
18  ECF No. 75.

19  **C.    Overview of the Proposed Amended Settlement Agreement**
20  **1.    Summary of the Equitable Relief Provisions**

21  Defendants agreed to injunctive relief obligating them to institute, implement, and
22  maintain a five-part Policy relating to requests for Guest Information from Federal
23  Immigration Authorities and when a warrant or subpoena for such information is required.
24  Agreement § X.A.1.a–b.  In addition, Defendants agreed to train appropriate employees at
25  Operated Locations to understand their responsibilities regarding the Policy and the
26  resources available to them when they need guidance.  *Id.* § X.A.1.c.  Defendants also
27  agreed to abide by recordkeeping and reporting requirements.  *Id.* § XI.  The Parties seek
28  an order that will enter this equitable relief as a three-year consent decree, providing the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Court jurisdiction to enter all orders necessary to implement the relief provided. *Id.* §§ VI.A–B. The beneficiaries of the injunctive relief are the Injunctive Relief Class, defined to include: all persons who were Guests at a Motion 6 Location in the United States during the Class Period, and whose Guest Information was provided to Federal Immigration Authorities by a Motel 6 Location in the United States. *Id.* § VII.B.

### 2. Summary of the Monetary Relief Provisions

For purposes of monetary damages under Rule 23(b)(3), the class represented by Plaintiffs is a **Settlement Class** consisting of all persons who were Guests at a Motel 6 Location in the United States during the Class Period, and as a result of a Registered Guest's Information having been provided to Federal Immigration Authorities by a Motel 6 location, suffered a privacy violation and/or were questioned, interrogated, detained, and/or placed in immigration removal proceedings by Federal Immigration Authorities. Agreement §§ VII.A, XII.A.[7] The Agreement specifies the criteria to determine the amount of any award, subject to a cap on any individual award of $200,000. *See id.* § XII.C.1.

### 3. Scope of Release

The Agreement provides for release by the Class Representatives, Plaintiffs, the Releasing Class, each member of the Releasing Class ("Releasors"), and the Releasor's estates of all claims that arise out of or relate to conduct within the Class Period concerning the provision of Guest Information to Federal Immigration Authorities by a Motel 6 Location, including, but not limited to, any conduct alleged and claim asserted or that could have been asserted or alleged in this action. *See* Agreement § VIII.B.

### 4. Settlement Administration and Notice

In the Preliminary Approval Order, the Court appointed: Arden Claims Service as the Claims Administrator; Martin F. Scheineman, Esq. as the Settlement Administrator; Centro de los Derechos del Migrante, Inc. ("CDM") to perform tasks specified in the Agreement; and Plaintiffs' Counsel as Class Counsel. ECF No. 75 ¶¶ 15–18.

---

[7]The Settlement Class excludes those who have filed a timely request to opt-out of the Settlement Class, but no opt-outs were filed.

The approved notice plan provided for notice in English and Spanish to be: (1) delivered by first-class mail, postage pre-paid, to all Class Members who could be identified by Defendants' records as potential Class Members; (2) published on MALDEF and CDM's Facebook and Twitter accounts; and (3) published on the Settlement Website established by ACS.  *Id.* ¶¶ 19–20; Agreement § XII.F.  After entry of the Preliminary Approval Order and in consultation with CDM, ACS, and the Settlement Administrator, the Parties agreed to the additional step of authorizing CDM to issue a press release—which was distributed to more than 150 media outlets in Mexico, El Salvador, Honduras, and Guatemala—that, in English and Spanish, provided key terms of the Agreement and the address for the Settlement Website.  Botts Decl. ¶ 7; Ex. 3, Botts Decl.

### 5.    Attorneys' Fees, Costs, and Expenses

The Parties agreed to a payment of $500,000 to Class Counsel for attorneys' fees and costs incurred in litigating this lawsuit on behalf of Plaintiffs, the Settlement Class, and the Injunctive Relief Class.  Agreement § XIII.A; Holguin-Flores Decl. ¶ 15.

## III.   ARGUMENT

At the preliminary approval phase, this Court preliminarily found that the previously defined Primary Class and Class 2 appeared to meet the applicable requirements of Rules 23(a) and (b) and should be conditionally certified, and that the settlement was fair, reasonable and adequate, and thus was likely to be approved.  While fewer than expected Class 2 Members filed claims, thousands of claimants have come forward, in effect validating the Court's preliminary findings and supporting the conclusion that the Settlement Class should be certified, the Agreement approved, and the Settlement Amount distributed.  Closer analysis of the applicable Rules and case law further supports final approval.

To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946

(9th Cir. 2011).  Rule 23(e)'s class settlement process generally proceeds in two phases.  "In the first phase, the court conditionally certifies the class, conducts a preliminary determination of the fairness of the settlement (subject to a more stringent final review), and approves the notice to be provided to the class."  *Mora v. Cal W. Ag Servs.*, *Inc.*, No. 1:15-cv-01490-LJO-EPG, 2019 WL 2084725, at *3 (E.D. Cal. May 13, 2019).  "In the second phase, the court holds a full fairness hearing where class members may present objections to class certification, or the fairness of the settlement agreement."  *Id.* at *4.  "Following the fairness hearing, the court is to take into account all of the information before it and confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate."  *Id.*  "[T]he court has discretion to modify class definitions where appropriate," including prior to and following the fairness hearing.  *Weeks v. Kellogg Co.*, No. CV 09-08102(MMM)(RZx), 2013 WL 6531177, at *5 (C.D. Cal. Nov. 23, 2013).

### A.   The Court Should Approve the Parties' Modification of the Monetary Relief Class Definition.

The Parties seek to modify the Agreement by redefining the monetary relief class as one class by combining the originally defined Primary Class and Class 2 into one Settlement Class.  The Parties' modification of the Agreement is proper, is in the best interests of the Class Members and the Parties, and will preserve judicial economy.

First, there is no question that this Court has the authority to redefine the classes at this stage of the proceedings.  *Id.* (citing *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001) ("Where appropriate, the district court may redefine the class."); *see also In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation, and the litigants are free to modify a class via a court-approved settlement agreement." (citations omitted)). District courts regularly approve such modifications before, and even following, a fairness hearing and before issuing a final approval decision.  *See, e.g.*, *Weeks*, 2013 WL 6531177, at *19 (granting final approval after the parties modified an agreement regarding the distribution of *cy pres* funds to address the court's concerns expressed at the fairness hearing); *Urbaniak*

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- 7 -

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    *v. Stanley*, Nos. 5:06-CT-3135-FL, 5:07-CT-3145-FL, 2010 U.S. Dist. LEXIS 142939, at

2    *1-2, 9-12, 19-21 (D. N.C. Aug. 27, 2010) (granting motion for final settlement approval,

3    noting that parties had filed supplement in response to concerns the Court expressed finding

4    that "the amendments to certain provisions remedy any concerns the court had as to the

5    adequacy of the settlement"); *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373,

6    1377 (M.D. Ga. 2006) (final approval granted, in part, because "the parties had negotiated

7    modifications and enhancements to the Stipulation of Settlement in response to objections"

8    (internal quotation marks omitted)).

9        Second, because the change to the class definition does not adversely alter the rights

10   or obligations of the Class Members, additional notice is unnecessary.  The Settlement Class

11   does not seek to enlarge or reduce the class or change who can benefit.  It merely seeks to

12   eliminate an unnecessary distinction between two classes and protect the right of all valid

13   claimants to receive the compensation allocated to them under the Agreement—for which

14   they have already applied.  In fact, merging the two monetary classes benefits all claimants

15   by ensuring that the numerosity requirement for class certification is met, increasing the

16   likelihood they will be paid.  *See Weeks*, 2013 WL 6531177, at *38 ("Courts do not

17   generally require that additional notice be provided to the class where modifications of a

18   settlement increases benefits to the class.") (citing *In re Prudential Ins. Co. of Am. Sales

19   Practices Litig*., 962 F. Supp. 450, 473 (D.N.J. 1997) ("Class members have already

20   received adequate notice both of the pendency of this class action and of the Proposed

21   Settlement. Class members need not be informed of the Final Enhancements to the

22   settlement because the Proposed Settlement is only more valuable with these changes.")).[8]

23       **B.    The Classes Should Be Certified.**

24       To confirm that the classes should be certified, the Court should assess the

25   requirements of Rules 23(a), 23(b)(2), and 23(b)(3), *see, e.g., In re Lifelock, Inc. Marketing*

26

27   ───────────────
     [8]Without certification as to all Class Members, Defendants would not obtain the closure for
28   which they bargained and would have to consider exercising their contractual right to
     terminate the Agreement, depriving all claimants of any benefit of Agreement.

*& Sales Practices Litig.,* No. 08-1977-MHM, 2010 WL 3715138, at \*1–3 (D. Ariz. Aug. 31, 2010), and confirm that the   Court's ordered notice procedure was adequate and effectively executed.  *See id.* at \*6; *see also Etter v. Allstate Insur. Co*., No. C17-00184-WHA, 2018 WL 5791883, at \*2 (N.D. Cal. Nov. 4, 2018).

### 1.    The Proposed Classes Satisfy Rule 23(a).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  Generally, classes of forty or more are sufficiently numerous.  *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913 (9th Cir. 1964); *Lee v. Glob. Tel\*link Corp.*, No. 2:15-cv-02495-ODW (PLA), 2018 WL 4625677, at \*5 (C.D. Cal. Sept. 24, 2018).  The Settlement Class is comprised of 1,976 claimants.  Accordingly, the Settlement Class more than satisfies the requirements of Rule 23(a)(1).

The Injunctive Relief Class also satisfies the numerosity requirement.  *See Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007) (citing advisory committee notes to the 1966 amendment ("Illustrative of 23(b)(2) are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." (brackets and original emphasis omitted))).  Defendants' records indicate that there are more than 52,000 Registered Guests who qualify as members of the Injunctive Relief Class.  Preliminary Approval Motion at 9; ECF No. 75 ¶ 2(a).  Joinder of all such persons is impracticable, and thus the Injunctive Relief Class satisfies Rule 23(a)(1).

Rule 23(a)(2) requires "questions of law or fact common to the class."  "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (internal citation omitted); *see also In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 117–18 (C.D. Cal. 2007).  "[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 154 (N.D.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Cal. 2015) (internal citation and quotation marks omitted).  "Where such a policy exists, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality."  *Id.* (internal citation and quotation marks omitted); *accord Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014).

Here, all Class Members have claims based on a common core of legal and factual issues.  All are alleged to have suffered injury, albeit to different degrees, stemming from the same alleged policy that authorized Motel 6 employees to share Guest Information with Federal Immigration Authorities.  The fact that certain claimants are entitled to higher awards under the Agreement depending upon the degree of interaction with Federal Immigration Authorities should not preclude the Court from finding commonality to be satisfied.  When differences "between the injuries allegedly suffered by particular class members is merely one of degree, . . . [that] is not enough to destroy the basic commonality of their claims."  *See Kagan v. Wachova Secs., L.L.C.*, Nos. 09–5337 SC, 11–0412 SC, 2012 WL 1109987, at *4-5 (N.D. Cal. Apr. 2, 2012); *see also In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014) ("[T]he legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse.").

Rule 23(a)(3) requires that named plaintiffs' claims be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Claims are typical if they are "reasonably co-extensive with those of absent class members," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) *overruled on other grounds by* Wal-Mart Stores, Inc., 564 U.S. 338 (2011), and the representative plaintiffs are members of the classes they seek to represent, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Here, the Class Representatives have claims typical of the Settlement Class and the Injunctive Relief Class.  Six Plaintiffs were Registered Guests whose Guest Information was disclosed.  *See* Exhibits 4–9 to the Preliminary Approval Motion.  The remaining two Plaintiffs (Jane F. and Jane N.) were not themselves Registered Guests so their personal information was not disclosed, but they were staying with family members who were

Registered Guests whose information was disclosed.  As a result, Jane F. and Jane N. were subjected to immigration action.  *See* Exhibits 10–11 to the Preliminary Approval Motion. All named Plaintiffs submitted claims to ACS that are not materially distinct from the other 1,976 eligible claims submitted.  The typicality requirement is met.

Rule 23(a)(4) requires that Class Representatives "fairly and adequately protect the interests of the class."  This requires resolving two issues: (1) whether the class representatives have interests in conflict with the proposed class; and (2) the qualifications and competency of proposed class counsel.  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *In re Live Concert Antitrust Litig.*, 247 F.R.D. at 118.

Plaintiffs do not have any interest that conflicts with the proposed Settlement Class. Jane V., John E., John D., John A., John W., and John M. have sworn that they, like others in the Settlement Class and the Injunctive Relief Class, contracted for hospitality services with Motel 6 during the period of time that a Motel 6 Location disclosed Guest Information to Federal Immigration Authorities.  *See* Exhibits 4–9 to the Preliminary Approval Motion. Jane F. and Jane N. have sworn that they, like others in the Settlement Class, were questioned, interrogated, detained, and/or placed in immigration removal proceedings because of the disclosure of Guest Information to Federal Immigration Authorities.  *See* Exhibits 10–11 to the Preliminary Approval Motion.  Nothing in any Plaintiff's experience presents any conflict with their fellow Class Members and the Plaintiffs are treated identically to all other Class Members.  No other Class Member has objected to the Class Representatives or their ability to represent other Class Members.

To assess the qualifications of Class Counsel, the Court should consider "(i) the work counsel has done in identifying or investigating potential claims[;] . . . (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  Here, Class Counsel is amply qualified.  Their thorough investigation resulted in a detailed Amended Complaint, demonstrating that they had an adequate information base from which

to assess the strengths and weaknesses of the claims.  *See* Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment; *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,   at *6 (N.D. Cal. Dec. 18, 2018); Ex. 3, Holguin-Flores Decl. ¶¶ 6–12, Preliminary Approval Motion.  The vigorous and extensive settlement negotiations—with an experienced mediator—also bore out that Class Counsel had developed enough support for the claims pled and that injunctive and monetary relief were supportable.  Moreover, Plaintiffs' counsel has numerous years' experience and demonstrated success in bringing class action claims, based in part on their command of the relevant law.  Ex. 3, Holguin-Flores Decl. ¶¶ 14–22, Preliminary Approval Motion.  Finally, now that Class Members have stepped forward, it is apparent that Class Counsel has adequately protected Class Members' interests, enabling thousands of Class Members to receive compensation should the Court grant this Motion.

### 2.  The Proposed Injunctive Class Satisfies Rule 23(b)(2).

In addition to satisfying the requirements of Rule 23(a), the Injunctive Relief Class must also satisfy Rule 23(b)(2).  Certification under Rule 23(b)(2) is appropriate where defendants have acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Courts in this Circuit recognize that it can be appropriate to separately certify injunctive relief and monetary damages classes that are largely coextensive.  *See, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 977 (C.D. Cal. 2015) ("[T]he Ninth Circuit has suggested on multiple occasions that district courts consider certifying separate Rule 23(b)(2) and 23(b)(3) classes. . . . Consequently, . . . it appears that the court can separately certify an injunctive relief class and, if appropriate, also certify a Rule 23(b)(3) damages class.").

Here, the purpose of the proposed injunctive relief is to prevent future conduct by Defendants that is similar to the past misconduct Plaintiffs allege, and it requires Defendants to implement and enforce a policy and training that will protect the Injunctive Relief Class from suffering similar harm in the future.  That benefit is separate from, but co-extensive

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

with, the monetary relief to be awarded to the Settlement Class, and it provides relief that respects the class as a whole.  The Injunctive Relief Class should also be certified.

### 3.   The Monetary Relief Classes Meet the Requirements of Rule 23(b)(3).

In addition to meeting the requirements of Rule 23(a), the monetary relief classes must also meet Rule 23(b)(3), which requires that:  (A) questions of law or fact common to the class predominate over questions affecting only individual members; and (B) a class action is superior to resolution by other available means.  Fed. R. Civ. P. 23(b)(3); *True*, 749 F. Supp. 2d at 1062.  The predominance test is satisfied when common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, et al., Federal Practice & Procedure § 1778 (2d ed. 1986)).  "[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).   When analyzing superiority, courts consider:  "(1) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; and (3) the desirability . . . of concentrating the litigation . . . in the particular forum." *True*, 749 F. Supp. 2d at 1062.

With respect to the Settlement Class, each member suffered harm as a result of the disclosure of Guest Information.  Though the Class Members may have suffered varying degrees of harm as a result of the disclosure, common issues still predominate: whether a disclosure policy existed; the fact of disclosure; whether such disclosure was wrongful; whether it was discriminatory and otherwise meets the elements of the claims pled; and whether it caused injury.  By certifying the Settlement Class, the Court avoids the need for separate adjudication of those issues.

To the extent there are any differences in the degree of harm sustained amongst claimants, those have been addressed by the Agreement, and certification will not prevent

individual claimants from being appropriately compensated.  Indeed, the Agreement sets forth a clear and common methodology for calculating damages that is directly connected to the alleged wrong, *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013), and ACS applied that methodology, Ferrante Decl. ¶ 11, 16; Ex. 5, Ferrante Decl.  As a result, ACS has calculated damages for each claimant based on the actual harm sustained.  *Id.*

Resolving all claims for these proposed national classes in one proceeding also will preserve efficiency for the Court, the Parties, and other courts.  It is neither economically feasible, nor judicially efficient, for the thousands of Class Members to file claims against Defendants on an individual basis.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980).  Moreover, those who interacted with Federal Immigration Authorities will avoid having to bring claims and prove damages in separate proceedings, and instead may recover their damages by prompt distribution from ACS—a significant benefit to those who may be distrustful of legal authorities.  The fact that no one has opted out—even though some are subject to the damages cap—speaks volumes about the benefits of this more streamlined process.

### 4.    The Class Action Notice Was Adequate, Effective, and Reasonable.

For the monetary relief class to be certified under Rule 23(b)(3), the Court also must be satisfied that Class Members have been provided with notice that complies with Rule 23(c)(2)(B), and have had adequate opportunity to decide whether to make a claim, opt out of the class, and/or object to the settlement.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Silber v. Mabon*, 18 F.3d 1449, 1454–55 (9th Cir. 1994).  Notice of a class action settlement must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and . . . be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citation omitted).  Here, the Parties provided notice that, in both substance

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   and delivery, complied with (and indeed exceeded) the requirements of the Preliminary

2   Approval Order.

3                     **a.    The Delivery of Notice was Compliant and Effective.**

4          With respect to the delivery of notice, the Parties complied with the multi-part notice

5   plan approved by the Court.  First, ACS provided written notice via the "Postcard Notice"

6   attached as Exhibit B to the Preliminary Approval Order.  The Postcard Notice was mailed

7   to all Class Members whom the Parties were able to identify from lists of Registered Guests

8   at the mailing address provided at the time of registration.  Ferrante Decl. ¶ 5; Ex. 3,

9   Ferrante Decl.  Based on that list, ACS made an initial mailing of 70,725 postcards by

10  September 30, 2019.  *Id.* ¶ 6.    For postcards returned, ACS re-mailed to forwarding

11  addresses, where applicable, and conducted advanced address searches for others.  *Id*.  To

12  date, there are 7,976 persons—about 11% of the Registered Guests believed to be potential

13  Class Members—for whom ACS has not been able to find a valid address.  *Id*.  However,

14  the Supreme Court has held that "notice reasonably certain to reach most of those interested

15  in objecting is likely to safeguard the interests of all," and "reasonable risks that notice

16  might not actually reach every [class member] are justifiable."  *See Mullane v. Cent.*

17  *Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950); *Silber*, 18 F.3d at 1454–55 (concluding,

18  under *Mullane* and other precedent, that "the appropriate standard is the 'best notice

19  practicable,'" not actual notice); *accord Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352-

20  MEJ, 2016 U.S. Dist. LEXIS 133832, at *15–17 (N.D. Cal. Sept. 28, 2016) (holding that

21  notice to class members was adequate although approximately 8% of the mailed notice was

22  deemed undeliverable and accepting that "an undeliverable rate between 10% to 20% is

23  typical in class action settlements").  Here, ACS delivered Postcard Notice to 89% of the

24  Registered Guests believed to be Class Members—more than enough to meet the

25  controlling standard.

26         Second, Class Counsel and CDM conducted an extensive social media campaign,

27  carefully crafted to reach claimants that the Parties could not identify—who were not

28  Registered Guests and thus would not have appeared on Defendants' address list.  Holguin-

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Flores Decl. ¶¶ 7-10; Botts Decl. ¶¶ 5-6; Ferrante Decl. ¶ 8; *see Roes 1-2 v. SFBSC Mgmt., L.L.C.*, No. 17-17079, 2019 WL 6721190, at *8 (9th Cir. Dec. 11, 2019) ("Publication notice has long been used as a supplement to other forms of notice, and technological developments are making it ever easier to target communications to specific persons or groups and to contact individuals electronically at little cost.").  The social media campaign included published notice via Facebook and Twitter, each of which directed readers to the Settlement Website, www.motel6settlement.com, established and maintained by ACS. Holguin-Flores Decl. ¶¶ 7-10; Botts Decl. ¶¶ 5-6; Ferrante Decl. ¶ 8.  MALDEF posted or tweeted about the settlement and Settlement Website in English and Spanish on 38 different occasions and reports that between 700 and 1,100 individuals were reached on each occasion.  Holguin-Flores Decl. ¶¶ 8-10.  CDM posted or tweeted about the settlement in English and Spanish on nine different occasions.  Botts Decl. ¶¶ 5-6.   CDM's activity reached 53,520 to 199,679 persons per Facebook post and 234 to 863 people per Twitter post.  *Id.*  In the experience of MALDEF, CDM, and ACS, social media is highly effective at providing notice to geographically dispersed mobile populations, particularly the communities likely to comprise Class Members in this case.  Holguin-Flores Decl. ¶ 13; Holguin-Flores Decl. ¶ 14, Preliminary Approval Motion; Ferrante Decl. ¶¶ 14, 18, Preliminary Approval Motion.

Third, the Parties cooperated in the wide distribution of a press release to more than 150 media outlets in Mexico and Central America to broadcast the proposed settlement and the Settlement Website to Class Members no longer in the United States.  An English-language copy of that press release is attached as Exhibit 3 to the Declaration of Benjamin Botts (of CDM).  Ex. 3, Botts Decl.

Fourth, ACS published the Court-approved Website Notice on the Settlement Website.  According to ACS's data, there have been 69,722 unique visitors to the website—far more than the number of persons who have submitted claims, suggesting that notice reached many more people than those who chose to submit claims.  Ferrante Decl. ¶¶ 4, 9. There were 307,008 page visits, more than 170,000 of which were from outside the United

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

States, suggesting that many people outside the United States received notice of the settlement.  *See* Ex. 5, Ferrante Decl.

### b.      The Contents of the Notice Were Clear and Comprehensive.

The Court approved the Postcard Notice and the Website Notice in the Preliminary Approval Order.  These notices are neutral and written in easy-to-understand language in both English and Spanish.  Each state:  (i) the nature of the action; (ii) the class definitions; (iii) the claims, issues, and defenses; (iv) that a class member may enter an appearance through an attorney if he or she wishes; (v) that the Court will exclude any Class Member who so requests; (vi) the time and manner of requesting exclusion; and (vii) the binding effect of a class judgment.  ECF No. 75, Preliminary Approval Order at Exs. B, D.  They thus satisfy the requirements of Rule 23(c).  *See generally* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Likewise, the notices posted on social media, which were substantially the same as those approved by the Preliminary Approval Order, satisfied Rule 23.  *See* ECF No. 75, Preliminary Approval Order at Ex. C; Ex. 4, Ferrante Decl.; Ex. 1-2, Botts Decl.

### c.      Class Members Had Adequate Time to Consider and Respond.

Notice was delivered such that Class Members had adequate time to decide whether to make a claim, to opt out, or to object to the Settlement.  The initial mailing of the Postcard Notice was completed by September 30, 2019—three months before the Claims Submission Deadline.  Ferrante Decl. ¶ 5.  Though some postcards were returned as undeliverable, most were delivered more than two months before the December 13, 2019 deadline to submit an opt-out request or objection—more than enough time than is needed.  *See id.* ¶¶ 5-6; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (approving class notice sent thirty-one days before objections deadline and forty-five days before final approval hearing).  In the ensuing weeks, thousands more were delivered as the result of efforts by ACS to find updated address.  Ferrante Decl. ¶ 7.  Not one person objected or opted out.  *Id.* ¶ 5-7.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    Likewise, the Website Notice and print and social media campaigns provided ample

2    opportunity for consideration and response by potential claimants.  The Settlement Website

3    was launched on August 23, 2019—more than four months before the Claims Submission

4    deadline.  The social media campaign also began well in advance of the relevant deadlines;

5    Class Counsel posted repeatedly about the settlement beginning in September and

6    continuing through December, Holguin-Flores Decl. ¶¶ 8-10, and CDM began using social

7    media to deliver notice in November, continuing through December.  Botts Decl. ¶¶ 5-6.

8    Had any Class Members wished to opt out or object, they had a meaningful opportunity to

9    do so, but none did.

10                  **d.      The Notice Given Was the Best Practical Notice.**

11   In sum, when looking at the contents, methods of delivery, and results, it is plain that

12   the notice delivered was the best practical notice that could have been delivered under these

13   circumstances.  *Silber*, 18 F.3d at 1454.  The Parties had the means to contact the vast

14   majority of Registered Guests directly based on Defendants' records of their stay at a Motel

15   6 Location and did so via the Postcard Notice.  *See* Ferrante Decl. ¶ 6-7.  The Parties did

16   not have the means to identify other potential claimants but notified them using the broad

17   public outreach.  Finally, because of public interest in this case, coverage of the Agreement

18   in the news media—in part due to the Press Release authorized by the Parties—provided an

19   additional means by which claimants learned of the settlement.  *See* Botts Decl. ¶¶ 7-8.

20   MALDEF is aware of at least 750 articles or stories related to the Agreement that were

21   published between July and December 2019.  Holguin-Flores Decl. ¶ 12.

22   As a result of the broad and varied forms of notice, approximately 3% of Registered

23   Guests during the Class Period have submitted claims, a percentage that is not atypical of

24   large consumer class actions and is in fact higher than others that have been approved.  *Keil*

25   *v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("Although [one objector] points out that the

26   low claims rate also means that only 3 percent of the class will receive this [monetary]

27   benefit, we note that a claim rate as low as 3 percent is hardly unusual in consumer class

28   actions and does not suggest unfairness."); *see Perez v. Asurion Corp.*, 501 F. Supp. 2d

1360, 1377-78, 1384 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of approximately 1.2 percent); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving consumer class action settlement with 3% claim rate).

The notice provided to those who were not Registered Guests also was sufficient. Under Rule 23(c)(2)(B), individual notice is required only to those "who can be identified through reasonable effort." The Parties had no ability to identify persons in Class 2 because they were not Registered Guests. As a result, they relied on the public notice approved by the Court. There always has been some uncertainty as to how many people met the criteria for that class because Federal Immigration Authorities have not disclosed the number of persons with whom they interacted. Though only a small number of Class 2 claimants have brought valid claims, there is still enough information to conclude that the public notice was the best notice practicable.

First, there are 70 persons who were not Registered Guests who submitted claims, and though some number of the claims were deemed ineligible, the fact that such claims were submitted demonstrates that the public outreach was effective. Ex. 5, Ferrante Decl. Second, the analytics provided by MALDEF, CDM and ACS reveal substantial levels of interaction with the public notice, including almost 70,000 website visitors, thousands more social media interactions, and hundreds of media articles in this country and Latin America. Third, the unique circumstances of this case suggest that response rates by claimants might be lower than would be typical in other cases because an encounter with Federal Immigration Authorities might cause some to be reluctant to engage in the legal process. *Garcia v. City of King City*, No. 14-cv-01126-BLF, 2017 WL 363257, at *7 (N.D. Cal. Jan. 25, 2017) (certifying class and granting final approval of settlement where 43 potential class members of the "approximately more than 200 Class Members" filed claims and recognizing that class members may be "extremely and understandably reluctant to participate in this case, or to even make a claim for settlement benefits, due to a fear of . . .

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

a governmental inquiry into their immigration status"). In short, one cannot conclude that the small raw number of verified Class 2 claims reveals insufficient notice. On the contrary, resolving these claims by class action is the best option available for the class as a whole, even if some members have chosen not to engage. *See e.g., Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621, 637 (C.D. Cal. 2007) (in certifying a class of plaintiffs with claims relating to the forceful dispersal of an immigration rally, acknowledging that "some class members may feel hesitant about coming forward on their own because they may be (or were at the time) in this country unlawfully."); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375-76 (E.D. Cal. 2014) ("Having found that the parties and their counsel took extensive efforts to locate and inform all putative class members of the settlement, and given that no class members have filed any objections to the settlement, the court finds and orders that no additional notice to the class is necessary.").

## C. The Court Should Approve the Settlement as Fair, Reasonable and Adequate.

Rule 23(e) identifies factors the Court should consider in determining whether to approve the Agreement.[9] All of the factors are satisfied here.

### 1. Adequate Representation

As set forth in Section IV.A.1.d, *supra*, the Class Representatives and Class Counsel have adequately represented the Settlement Class, and thus the first factor under Rule 23(e)

---

[9]Prior to the 2018 amendment, Rule 23(e) provided simply that the Court must find that the settlement is "fair, reasonable, and adequate." To assess whether a settlement met that standard, the Ninth Circuit developed a list of factors for courts to apply. *See, e.g., Churchill Vill., L.L.C.*, 361 F.3d at 575; 2018 Advisory Committee Notes to Rule 23(e)(2) ("Courts have generated lists of factors to shed light on this ["fair, reasonable, and adequate"] standard."). The 2018 Advisory Committee Notes to the Rule, however, recognize that it was necessary to include in the rule a shorter number of factors than the Ninth Circuit in *Churchill* and others historically had used. *Id.* ("A lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process."). Thus, the Parties address this settlement using the factors set forth in the amended Rule 23(e). Should the Court have any concerns about whether the *Churchill* factors might still apply, however, the Parties will be prepared to address at the fairness hearing why this settlement meets those factors as well.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1  is met.

2  **2.   Arm's Length Negotiations and Settlement**

3  The second factor also is met, as the negotiations between the Parties were vigorous

4  and contested.  The Parties engaged in a series of informal, arm's length discussions over a

5  period of months before enlisting the services of an independent, professional mediator.

6  Holguin-Flores Decl. ¶¶ 6-7, Preliminary Approval Motion.  A full-day mediation resulted

7  in the original tentative settlement, and the complaint and agreement were substantially

8  revised after a second full-day mediation.  Agreement §§ IV.C, G.  These lengthy

9  negotiations before a third-party demonstrate that the Settlement was anything but

10  collusive.  *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL

11  3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator …

12  confirms that the settlement is non-collusive.").  Moreover, the negotiations between the

13  first agreement and the final Agreement produced a substantial increase in the amount of

14  funds available to be paid to claimants and increased the amount that could be paid to an

15  individual claimant with only a slight increase in the amount of fees to be paid to Class

16  Counsel. These facts demonstrate that the negotiations were to the benefit of the Settlement

17  Class, and not as part of a collusive scheme to benefit the lawyers.

18  **3.   Adequacy of Relief**

19  Rule 23(e)(2)(c) requires the relief in a proposed agreement is adequate.  Fed. R.

20  Civ. P. 23(e)(2)(c)(i)-(iii).[10]  All of the factors are satisfied here.

21  **a.   The Costs, Risks, and Delay of Trial and Appeal**

22  Considering the first factor, "[t]he Court cannot and need not determine the merits

23  of the contested . . . issues at this stage, and to the extent courts assess this factor, it is to

24  determine whether the decision to settle is a good value for a relatively weak case or a sell-

25  out of an extraordinary strong case."  *Misra v. Decision One Mortg. Co.*, No. SA CV 07-

26

27  [10]A fourth factor is any agreement made in connection with the proposal.  Fed. R. Civ. P.
   23(e)(2)(C)(iv).  Here, there is no agreement other than what was provided to the Court in
28  connection with the Preliminary Approval Motion.  *See* Agreement § XIV.F.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

0994 DOC (RCx), 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009) (internal citation and quotations omitted).  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Secs. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Here, counsel for the Parties assessed the strengths and weaknesses of Plaintiffs' claims and the likelihood of certification and, with the assistance of a sophisticated mediator, arrived at an agreement that delivers substantial value to Class Members.  Class Counsel made the judgment that the settlement was in the best interests of the Class Members by relying on their thorough investigation of the facts and their "considerable expertise in . . . class action litigation." *Knight*, 2009 WL 248367, at *4; *see also* Holguin-Flores Decl. ¶¶ 14-22, Preliminary Approval Motion.  Likewise, they assessed not only the risks of loss, but also the costs associated with trial and appeal and the time that would be required to bring this to a successful conclusion and pay claims without a settlement – which could take several additional years.  While Class Counsel are confident in the strength of their claims, and have investigated them fully, they recognize that Defendants have factual and legal defenses that, if successful, could defeat or substantially impair the value of their claims. *See, e.g.*, ECF No. 23.  As a result, they negotiated with ample knowledge of the strengths and weaknesses of their case.  Holguin-Flores Decl. ¶ 8, Preliminary Approval Motion.  "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery…." *In re NVIDIA Corp. Derivs. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

Defendants' experienced counsel also assessed the same risks of loss and delay, as well as the burdens that extended public litigation would impose on the companies, their personnel, and their brand.  A trial involving the claims of potentially thousands of potential class members who stayed at numerous, geographically dispersed locations would require the presentation of dozens of witnesses at a minimum, including a significant number from

Defendants.  Continuing media coverage of the controversy could cause some of the public to develop negative attitudes—whether earned or not—about Motel 6.  In contrast, the proposed Agreement will yield a certain, substantial, and prompt conclusion.  "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement…."  *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see* Fed. R. Civ. P. 23(e)(2)(C)(i).  Motivated by a genuine desire to implement a policy and practice that would prevent any future violation of law, Defendants made the informed and reasoned choice to agree to a consent decree and pay significant value, in exchange for controlled closure of this dispute.  There is nothing to counter the presumption that the Parties' counsel recommendation is reasonable.

Moreover, the benefits of the relief obtained are obvious.  First, the Agreement provides Class Members with injunctive relief, which will protect them from future disclosure of Guest Information except in specific, lawful circumstances.  Such injunctive relief provides significant value, as it will prevent the alleged practices that Plaintiffs claim harmed consumers from reoccurring.  *See Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) (approving settlement for injunctive relief that "achieve[d] the goals of the lawsuit").

Second, the Agreement provides generous monetary relief for members of the Settlement Class who had *no* direct interaction with Federal Immigration Authorities during their stay at Motel 6.  Those Class Members will receive $75 (which equals or exceeds the nightly cost of many Motel 6 rooms).  Agreement § XII.C.1.  All other Class Members will receive as much as $200,000 from the Settlement Fund, depending on the specifically tiered formula in the Agreement.  *Id.*  ACS has determined that at least eight, and perhaps as many as twenty-one, Class Members are entitled to the maximum payment of $200,000; and as many as twenty other Class Members are entitled to compensation of $20,000 or more.  *See* Ex. 5 to Ferrante Decl.  Final approval of the Agreement would enable those Class Members and others to receive meaningful compensation for serious harm they sustained.  None of the Class Members has opted out or objected, a strong indicium that the proposed settlement

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

is fair, adequate, and reasonable. *See Churchill*, 361 F.3d at 577; *Cruz v. Sky Chefs, Inc.*, No. C–12–02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014).

### b.   Effectiveness of Distribution of Relief

With respect to the second factor in Rule 23(e)(2), the Parties can distribute relief effectively.   ACS and its principals have decades of experience handling claims administration, including distributions of payments.  The handling of the claims submission process in this case has been seamless; it has processed thousands of claims timely and efficiently.

For each submitted claim form, ACS has collected contact information for the claimant, including a mailing address, email address, and telephone number.  Awards will be distributed by mail to the address submitted on the claim form. Agreement § XII.Q.  For each claimant, ACS already has calculated the amount to be paid (with the exception of the 43 claims that were deficient as submitted and are subject to correction no later than February 24, 2020).  Thus, ACS has the information it needs to be able to send payments to claimants; it has the experience to know that it is capable of doing so accurately and efficiently; and it is willing to do so upon approval by the Court and once the deficient claims are resolved.

### c.   The Terms of the Attorneys' Fees Award

The proposed attorneys' fees award is a powerful indicator of the fairness of the Agreement.  Court approval of class action settlements is predicated on the concern that defendants and class counsel may collude for their own respective benefit at the expense of the class. *See Stanton,* 327 F.3d at 957–58.  This concern is not present in this case.  Here, if this settlement is approved, Plaintiffs' counsel will be entitled to $500,000—about 5% of the total settlement amount (not including fees and costs that Defendants have agreed to bear).  Agreement § XIII.A.  This is an eminently reasonable request, far lower than the 25% of recovery benchmark used in this Circuit for class action attorneys' fees awards. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of

the common settlement fund; in this circuit, the benchmark percentage is 25%.").  Even if one were to compare the proposed attorneys' fees award to the amount to be distributed to claimants, the fee is still appropriate.  Depending on the resolution of the deficient claims, claimants will receive a minimum of $1,906,225 and as much as $5,468,975.  Even at the lowest end of that range, the proposed fee is about 25%; at the higher end, it is less than 10%  It also is in line with the hourly amount that Plaintiffs' Counsel would have billed at this stage if they were charging their clients at a reasonable hourly rate.  Holguin-Flores Decl. ¶¶ 15-16.  Further, Class Counsel has delivered non-monetary benefits to the Injunctive Relief Class in the form of the Consent Decree that render their fee even more reasonable.

### 4.    Equitable Treatment of Class Members

The final factor under Rule 23(e)(2) requires the Court to assess whether the Agreement provides relief on an equal basis to all Class Members.  Here, it does.  All members of the Settlement Class are entitled to be compensated for their harm, and the variation in awards will be based on specific, objective criteria.  *See* Agreement § XII.C.1.  Thus, all members will be treated the same way, even if the amounts they receive are—appropriately—different.  Importantly, all Class Members are entitled to the same relief as the Class Representatives; the Agreement does not give preferential treatment to the Class Representatives.

In the Agreement, the Parties anticipated the possibility that the full Settlement Amount might not be needed for distribution to Claimants, and thus they reached agreement as to how such funds should be distributed.  Under the Agreement, $1,500,000 of the undistributed funds would be returned to Defendants, and the remainder would be distributed to specified non-profit organizations (subject to the Court's approval).[11]

The proposed *cy pres* distribution does not offend any notion of justice or principle

---

[11]Until the deficient claims are resolved and all payments are made, the Parties cannot determine the amount of any *cy pres* payment.  Based on the current claims data, it could be in a range from $3 million to $6.5 million. In any event, $1.5 million of unclaimed funds would revert back to Defendants.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

of law.  Though some courts have on occasion questioned or rejected proposed *cy pres* distributions that dwarf amounts to be paid to actual claimants,  *see e.g., Frank v. Gaos*, 586 U.S. ___, 139 S.Ct. 1041 (2019) (granting certiorari to review a settlement in which the parties proposed to apportion $3.2 million of an $8.5 million settlement fund for attorneys' fees and $5.3 million to a group of *cy pres* recipients, with none allocated to direct monetary relief for class members), such concerns are not present here.  Here, this is not a *cy pres* only settlement and every Class Member who has submitted a valid claim will receive a cash award between $75 and $200,000.  Claimants will receive payments totaling approximately $2 million to $5.5 million, depending on the deficient claims.  Class Members also will benefit from the injunctive relief contained in the Agreement.

In addition, the limited *cy pres* payment is to be made here only because, after making all valid payments to Class Members, there remains more than $500,000 left in the Settlement Amount.  This type of *cy pres* award routinely has been upheld by numerous courts.  *See, e.g., In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 172 (3d Cir. 2013) ("We join other courts of appeals in holding that a district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury."); *see also* 4 Newberg on Class Actions § 12:32 (5th ed.) ("Courts in every circuit, and appellate courts in most, have approved the use of *cy pres* for unclaimed class action awards.").

Common sense also supports approving the *cy pres* element in the unique circumstances of this case.  As noted above, because Federal Immigration Authorities did not disclose the number of persons with whom they interacted as a result of the disclosure of Guest Information, the Parties had a limited ability to project the number of claimants who would make claims or the amount of their damages.   Further, as explained above, a number of individuals may have felt reluctant to file a claim.  *See supra* Section III.B.4.d.  Here, Defendants, as a gesture of their good faith and commitment to the changes brought about by this litigation, agreed that, should less than $9.5 million be claimed, some amount

would be paid to the *cy pres* recipients, rather than being returned to Defendants.

Finally, as discussed more fully in the Preliminary Approval Motion, the *cy pres* recipients here "bear[] a direct and substantial nexus to the interests of absent class members," *Lane v. Facebook, Inc.,* 696 F.3d 811, 821 (9th Cir. 2012), by addressing "the objectives of the underlying statutes" and "the interest of the silent class members, including their geographic diversity," *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). The Parties have agreed to propose the following four organizations as recipients of the capped *cy pres* amounts:  1) The Florence Immigrant & Refugee Rights Project; 2) The Northwest Immigrant Rights Project; 3) The National Immigrant Justice Center; and 4) TheDream.US.  If any *cy pres* distribution is to be made, each of the first two listed organizations would receive 35%, and each of the latter two would receive 15%.  Holguin-Flores Decl. ¶ 9-10, Preliminary Approval Motion.

### D.   The Court Should Issue All Orders Necessary to Effectuate the Settlement in Full.

To effectuate the full Agreement between the Parties and deliver all intended relief to the Class Members, the Parties respectfully request that the Court enter the Proposed Order and the attached Consent Decree.  In addition to providing for certification of the Classes and approval of the Agreement, the Proposed Order authorizes ACS to make the payments authorized by the Agreement to Claimants, as well as the reversion payment to Defendants and the *cy pres* payments to the designated *cy pres* recipients; releases all claims by the Releasing Class; and authorizes payment of the attorneys' fees amount to Class Counsel.  The proposed Consent Decree secures the performance of the equitable relief for the agreed-upon three-year period.

### IV.   CONCLUSION

For the foregoing reasons, the Parties respectfully request the Court grant the requested relief.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

DATED this 17th day of January, 2020.

SNELL & WILMER L.L.P.


By: */s/ Patricia L. Refo*
     Donald W. Bivens
     Patricia L. Refo
     One Arizona Center
     400 E. Van Buren, Suite 1900
     Phoenix, Arizona  85004-2202

MUNGER, TOLLES & OLSON, LLP

     Donald B. Verrilli, Jr.

VENABLE LLP

     Peter J. Kadzik
     Stacie E. Tobin

*Attorneys for Defendants*

     MEXICAN AMERICAN LEGAL DEFENSE
     AND EDUCATION FUND, INC.


By: */s/ Andrés Holguin-Flores (With Permission)*
     Thomas A. Saenz
     Andrés Holguin-Flores
     Nina Perales
     Daniel R. Ortega, Jr.

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2

3      I hereby certify that on the 17th day of January, 2020, I electronically transmitted

the attached document to the Clerk's Office using the CM/ECF System for filing and
4
transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.
5

6      */s/ Catherine A. Ward*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000