1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9    Jane V.; John A.; John E.; Jane F.; John D.;
      John M.; Jane N.; and John W.;            No. CV18-242 PHX DGC
10   individually and on behalf of all others
      similarly situated,                        **CONSENT DECREE**

11                    Plaintiffs,

12            v.

13   Motel 6 Operating L.P., a limited
      partnership; G6 Hospitality LLC, a limited
14   liability company, dba Motel 6; and Does
      1-10,
15
                      Defendants.
16

17

18          Plaintiffs Jane V., John A., John E., Jane F., John D., John M., Jane N., and John W.

19   ("Plaintiffs"), and Defendants Motel 6 Operating L.P. and G6 Hospitality LLC

20   ("Defendants") (collectively the "Parties") having privately negotiated and entered into a

21   Third Amended Settlement Agreement, attached with the Second Amended Settlement

22   Agreement as **Exhibit A** (collectively, "Agreement"), and having appeared and asked the

23   Court to enter this Consent Decree pursuant to their Agreement, and without admitting or

24   denying the allegations in the Complaint;

25          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

26   **I.      JURISDICTION**

27          The Parties stipulate that: (i) the Court has jurisdiction over the Parties and subject

28   matter of the Action; (ii) if the claims asserted in the Action were proven, the Court would

have authority to grant the equitable relief and monetary damages set forth in the Agreement; (iii) venue is proper in the United States District Court for the District of Arizona; and (iv) the Court may retain jurisdiction of the Action during the duration of the Agreement solely for the purposes of entering all orders that may be necessary to implement the relief provided.

## II.   DEFINITIONS

For the purposes of this Consent Decree, the defined terms of the Agreement apply.

## III.   EFFECTIVE DATES AND DURATION

Unless otherwise provided, the equitable provisions addressed in Sections VI and VII in this Consent Decree are effective immediately upon the Final Approval Date and shall remain in effect for three years (36 months) from that date.

## IV.   TERMINATION

This Consent Decree shall automatically terminate upon the election of a Party in accordance with the terms set forth in Section IX.F.1. of the Agreement.

## V.   GENERAL EQUITABLE PROVISIONS

### A.   General Injunctive Provisions

Effective immediately upon the Final Approval Date and for three years (36 months) from that date, Defendants shall implement and maintain the following policies and internal procedures ("the Policy"):

1.   Defendants shall maintain the 24-Hour Hotline that they established to assist employees at Motel 6 Entities when they receive any request for Guest Information from Federal Immigration Authorities.

2.   Defendants shall respond to requests for information from Federal Immigration Authorities as follows:

a.   Defendants shall not share Guest Information with Federal Immigration Authorities without a judicially enforceable warrant or subpoena, except where the Federal Immigration Authority articulates a credible reason to believe that a Guest, employee, or other individual is in imminent danger.  For purposes of this subsection,

1   a "credible reason" is a particularized concern related to the safety and well-being of an
2   individual currently on the property.

3          b.   With respect to all other warrants or subpoenas presented by Federal
4   Immigration Authorities, Defendants shall not share Guest Information with Federal
5   Immigration Authorities until such warrants or subpoenas have been sent to Defendants'
6   legal department or other individuals designated by Defendants, who will have been trained
7   to comply with this Policy and to address requests from Federal Immigration Authorities,
8   and until such persons authorize the disclosure of Guest Information.

9          c.   Defendants will continue to train their employees that if they have
10  questions about this Policy, they should call the 24-Hour Hotline.

11         d.   Defendants shall maintain their established brand standard requiring
12  that Franchised Locations adopt and implement the policies and procedures described in
13  Section X.A of the Agreement.

14         e.   Defendants shall maintain the online mechanism that was created to
15  allow any person at a Motel 6 Location to submit a report when he or she believes that Guest
16  Information has been provided to Federal Immigration Authorities or that this Policy has
17  been violated in any manner (a "Compliance Complaint").   Any person who submits a
18  Compliance Complaint may do so anonymously.

19         3.   Defendants shall continue to provide the following training:

20         a.   For each Operated Location employee who has the ability to make
21  Guest Information available, training to understand the Policy and their responsibilities with
22  regard to the Policy, including the purpose and procedures regarding Defendants' 24-Hour
23  Hotline, such as when it is appropriate and necessary to contact Defendants' 24-Hour
24  Hotline.

25         b.   The training described in this section may be held in conjunction with
26  other business, at Defendants' discretion, and may be organized geographically in such
27  fashion as Defendants deem appropriate.

28

**B.      Dispute Resolution and Enforcement Procedures**

1.      The Parties agree to the appointment of Martin F. Scheinman, Esq., or any successor(s) agreed to by the Parties to the Agreement, as Settlement Administrator. The Settlement Administrator may be removed at the joint written request of Class Counsel and Defendants, or by order of the Court upon motion of any Party and a showing of good cause that Mr. Scheinman should no longer serve as Settlement Administrator.  In the event that Mr. Scheinman becomes unavailable to serve as Settlement Administrator for any reason, the Parties will make a good faith effort to select on a joint basis a new Settlement Administrator.  If the Parties are unable to reach agreement as to a successor Settlement Administrator within forty-five (45) days following the date Mr. Scheinman becomes unavailable to serve as Settlement Administrator, the Court shall appoint a successor Settlement Administrator upon motion of Class Counsel or Defendants.  Class Counsel or Defendants may nominate persons for consideration as a successor Settlement Administrator.  The Parties shall each have the right to interview any nominated person, and to present argument and evidence to the Court regarding the selection of the successor Settlement Administrator.

2.      The Settlement Administrator shall have authority to resolve all disputes arising under the Agreement, subject to limitations and standards set forth in the Agreement.  The Settlement Administrator in the course of resolving disputes shall have authority to modify this Consent Decree, subject to an appeal by either Party to the Court and as provided in Sections X.B.4–7 of the Agreement.

3.      The Parties shall use Best Efforts to resolve promptly any differences or any disputes regarding the interpretation or implementation of the Agreement.

4.      Each Party shall have the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Agreement subject to limitations and standards set forth in the Agreement.

a.      If either Party has good reason to believe that a legitimate dispute exists that cannot be resolved informally with the Settlement Administartor, the

initiating Party shall first promptly give written notice to the other Party, including: (a) a reference to all specific provisions of the Agreement that are involved; (b) a statement of the issue; (c) a statement of the remedial action sought by the initiating Party; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the initiating Party;

b.      Within thirty (30) days after receiving such notice, the non-initiating Party shall respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position, including the facts and arguments upon which it relies in support of its position;

c.      The Parties shall undertake good-faith negotiations, including meeting and conferring by telephone or in person and exchanging relevant documents and/or other information, to attempt to resolve the issues in dispute or of alleged noncompliance;

d.      The Settlement Administrator, upon motion, may permit a Party to take post-settlement discovery as provided by the Federal Rules of Civil Procedure, but only as to matters relevant to the underlying claim of breach, if the Settlement Administrator determines that the informal exchange of documents or information has not been sufficient to allow the Party to present the dispute upon a factual record adequate for a fair determination of the issue;

e.      If the Parties' good-faith efforts to resolve the matter have failed, and after written notice of an impasse by the initiating Party to the non-initiating Party, the initiating Party may file a motion with the Settlement Administrator, with a supporting brief, requesting resolution of the dispute or the issues of non-compliance, provided that such motion shall be limited to the dispute(s) and/or issue(s) as to which the Parties have met and conferred as described here;

f.      The non-moving Party will have fifteen (15) days to respond to any such motion;

g.      The Settlement Administrator shall attempt within fifteen (15)

days after filing of the final brief to resolve the dispute and may schedule a hearing or other proceeding, including an evidentiary hearing, to resolve the matter; and

        h.    Within thirty (30) days of any hearing, the Settlement Administrator shall issue a written determination, including findings of fact if requested by any Party.

        5.    The provisions of this Section do not prevent any Party from promptly bringing an issue directly before the Court when exigent facts or circumstances require immediate Court action to prevent a serious violation of the terms of the Agreement, which otherwise would be without meaningful remedy.  The parties shall jointly place a conference call to the Court regarding any such matter and, with leave of court, may file a motion.  The moving papers shall explain the facts and circumstances that necessitate immediate action by the Court.  Absent a showing of exigent facts or circumstances, the Court may refer the matter to the Settlement Administrator to resolve in accordance with procedures set forth above.  If any such matter is brought before the Court requesting immediate action, the other Party shall be provided with appropriate actual notice, and an opportunity to be heard, under the Local Rules of the Court and the Federal Rules of Civil Procedure. The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts or circumstances, but no such matter may be heard or considered on an *ex parte* basis.

        6.    Any Party who disagrees with a decision of the Settlement Administrator may seek relief from the Court within fourteen (14) days of receipt of notice of the decision by the Settlement Administrator.  Any such request for relief shall be raised initially in a joint conference call with the Court and, after such call and with leave of court, may be brought by motion under the Local Rules of the Court and Federal Rules of Civil Procedure.  A Party may seek any remedy provided by law, provided that such remedy is consistent with the provisions of the Agreement.

        7.    The Parties agree that, for any dispute decided by the Settlement Administrator under Section X.B of the Agreement and which decision would require

modification of the Consent Decree:

          a.     The Parties shall cooperate in jointly requesting the Court to modify the Consent Decree to reflect the resolution of said dispute; or

          b.     The Party disagreeing with such decision shall, as part of any request for relief made under Section X.B.6 of the Agreement, request that the Consent Decree be modified or affirmed, as appropriate.

          c.     Nothing herein shall be construed as authorizing the Settlement Administrator to require the Court to alter the terms of its Consent Decree, or to disregard the clear and unambiguous language of the Consent Decree.

        8.     Only Plaintiffs or Defendants shall have standing to move the Court to enforce, apply, or modify the Agreement.  Any individual concerned about Defendants' compliance with the Agreement may so notify Class Counsel and request that they examine Defendants' compliance and seek such relief, if any, as may be appropriate.  In the event that any Party seeks to utilize the dispute resolution procedure, then each Party shall bear its own attorneys' fees, costs, and expenses for all work performed through resolution by the Settlement Administrator.  In the event that any Party seeks to appeal any decision of the Settlement Administrator, then the prevailing party in such matter shall be entitled to recover reasonable attorneys' fees, costs, and expenses incurred in such appeal from the other Party.  Whether and to what extent any Party is a prevailing party and awarded fees and expenses shall be determined in the sole and absolute discretion of the Court.

## VI.    RECORDKEEPING AND REPORTING

### A.    Documents to be Preserved for the Duration of the Agreement

Defendants shall retain the following records for the period set forth in Section III of this Consent Decree or as required by state or federal law, whichever is longer:

        1.     Compliance Complaints, as defined in Section X.A.1.b.v. of the Agreement;

        2.     Incident Reports; and

        3.     Logs of any calls made by Defendants' employees (including

employees at Operated Locations) to the 24-Hour Hotline referenced in Section X.A.1.a. of the Agreement.

### B.     Access to Documents

All documents required to be maintained by the express terms of the Agreement, and all documents that are provided to the Settlement Administrator, Class Counsel, or the Court under the terms of this Consent Decree, are and shall be treated as confidential business records.   Neither Class Counsel, nor the Settlement Administrator, nor the Claims Administrator nor Centro de los Derechos del Migrante, Inc., shall divulge any such documents to any third party unless so ordered by a court after notice to Defendants and an opportunity for Defendants to object to such disclosure and to be heard.  Upon expiration of this Consent Decree, Class Counsel, the Claims Administrator, and the Settlement Administrator shall destroy any and all documents in any format Defendants furnished under this Agreement.  This provision shall not prevent a Party from filing otherwise confidential documents with the Court, provided that, either:  (a) such documents are filed under seal; or (b) Class Counsel give ten (10) days advance notice to Defendants, to permit opportunity to seek a protective order sealing such documents.

### C.     Compliance and Status Conference

During the period set forth in Section III of this Consent Decree, the Parties shall conduct an annual status conference with the Settlement Administrator, with a report to the Court following the status conference to discuss the status of implementation of the Consent Decree.  The Parties shall be represented at the status conference.  No Party shall file any document with the Settlement Administrator in conjunction with the status conference, unless directed to do so by the Settlement Administrator.

IT IS SO ORDERED.

Dated this 18th day of February, 2020.

David G. Campbell
Senior United States District Judge

1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF ARIZONA

11

12   Jane V.; John A.; John E.; Jane F.; John D.;        No. 2:18-cv-00242-DGC
     John M.; Jane N.; and John W.;
13   individually and on behalf of all others           **THIRD AMENDED SETTLEMENT**
     similarly situated,                                **AGREEMENT**

14                    Plaintiffs,

15          v.

16   Motel 6 Operating L.P., a limited
     partnership; G6 Hospitality LLC, a limited
17   liability company, dba Motel 6; and Does
     1-10,
18
                     Defendants.
19

20

21

22

23

24

25

26

27

28

This Third Amended Settlement Agreement incorporates all provisions of the Second Amended Settlement Agreement and Addendum, except as noted below.

1.     Section III.E defining "Class 2" is deleted.

2.     Section III.F defining "Class 2 Members" is deleted.

3.     Section III.DD defining "Primary Class" is deleted.

4.     Section III.EE defining "Primary Class" Members" is deleted.

5.     Revise Section III.HH as follows: "'Releasing Class' means the Settlement Class and Injunctive Relief Class, collectively."

6.     Revise Section III.JJ as follows: "'Settlement Class' means all persons who were Guests at a Motel 6 Location in the United States during the Class Period, and as a result of a Registered Guest's Information having been provided to Federal Immigration Authorities by a Motel 6 Location, suffered a privacy violation and/or were questioned, interrogated, detained, and/or placed in immigration removal proceedings by Federal Immigration Authorities, except those who have filed a timely request to opt-out of the Settlement Class."

7.     Replace Section VII.A.1.-2 by eliminating references to "Primary Class" and Class 2," with Section VII.A that shall read as follows:  "For purposes of the monetary damages provided in this Agreement, the Parties shall request that the Court conditionally certify a 'Settlement Class' under Federal Rule of Civil Procedure 23(b)(3) defined as:  All persons who were Guests at a Motel 6 Location in the United States during the Class Period, and as a result of a Registered Guest's Information having been provided to Federal Immigration Authorities by a Motel 6 Location, suffered a privacy violation and/or were questioned, interrogated, detained, and/or placed in immigration removal proceedings by Federal Immigration Authorities, except those who have filed a timely request to opt-out of the Settlement Class."

8. Replace Section XII.1-2 by eliminating references to "Primary Class" and Class 2," with Section X.A that shall read as follows: "The Claims Administrator shall determine that a claimant is a member of the Settlement Class if it can reasonably be determined from

1   Defendants' records and/or the information provided in the claim form that the claimant

2   was a Guest at a Motel 6 Location in the United States during the Class Period, and as a

3   result of a Registered Guest's Information having been provided to Federal Immigration

4   Authorities by a Motel 6 location, suffered a privacy violation and/or were questioned,

5   interrogated, detained, and/or placed in immigration removal proceedings by Federal

6   Immigration Authorities."

7

8        To clarify their intent, the Parties seek to merge the previously defined "Primary

9   Class," Section III.BB of the Second Amended Agreement, and "Class 2," Section III.E of

10   the Second Amended Agreement, into one newly defined "Settlement Class." Any other

11   references in the Second Amended Agreement to "Primary Class," and/or "Class 2," not

12   specified here shall be defined as "Settlement Class." Further, any other references in the

13   Second Amended Agreement to "Primary Class Members," and/or "Class 2 Members" not

14   specified here shall be defined as "Settlement Class Members."

15
16   THE UNDERSIGNED PARTIES made, executed, and entered into this agreement as of
     the date the last Party has signed below.
17

18   DATED:  January 17, 2020
19                                                     For Plaintiffs
20                                              Andrés R. Holguin-Flores
                                                       Printed Name
21                                              Class Counsel
22                                                       Title
23

24   DATED:  January 17, 2020
25                                                     For Defendants
26                                              STACEE TOBIN
27                                                       Printed Name
                                                Counsel for Defendants
28                                                       Title

                                         2

1    **<u>SECOND AMENDED SETTLEMENT AGREEMENT</u>**

2    **I.    INTRODUCTION**

3            This Settlement Agreement ("Agreement") is entered into by Defendants Motel 6

4    Operating L.P. and G6 Hospitality LLC, doing business as Motel 6 ("Defendants"), and

5    John A., John D., John E., Jane F., John M., Jane N., Jane V., and John W. ("Plaintiffs"),

6    proceeding pseudonymously and as Class Representatives, for the purpose of resolving

7    the Action between them (collectively, Plaintiffs and Defendants shall be referred to as

8    the "Parties").  This Agreement has been reached as a result of good faith negotiation

9    supervised by a professional mediator.

10   **II.    PURPOSES OF SETTLEMENT**

11           The Parties have entered into this Agreement for the following purposes:

12           A.      To resolve all disputes covered by the litigation in such a way as to avoid

13   further expense and protracted disputes between the Parties.

14           B.      To create an efficient procedure for implementing equitable relief and

15   monetary damages under the terms of this Agreement; and

16           C.      To finally resolve all claims and defenses asserted in the Action.

17   **III.    DEFINITIONS**

18           A.      "Action" means *Jane V., et al v. Motel 6 Operating L.P., et al.*, D. Ariz.

19   (Case No. 2:18-cv-00242-DGC).

20           B.      "Best Efforts" means commercially reasonable efforts designed to comply

21   with the specific objectives to which the efforts are directed.

22           C.      "Centro de los Derechos del Migrante, Inc." or "CDM" means the

23   organization that will assist the Claims Administrator to conduct class notice in Mexico

24   and Latin America pursuant to a contract between CDM, the Claims Administrator,

25   Mexican American Legal Defense and Educational Fund ("MALDEF"), and G6

26   Hospitality LLC ("G6").

27           D.      "Claims Administrator" means Arden Claims Service in Port Washington,

28   New York, or any successor(s) agreed to by the parties to this Agreement.

29           E.      "Class 2" means the definition set forth in Section VII.A.1.b.

1   F.     "Class 2 Members" means the definition set forth in Section VII.A.1.b.

2   G.     "Class Counsel" means MALDEF and the Ortega Law Firm.

3   H.     "Class Members" means each and every member of the Settlement Class.

4   I.     "Class Period" means the period from February 1, 2015 through June 28,

5   2019.

6   J.     "Class Representatives" or "Plaintiffs" means John A., John D., John E.,

7   Jane F., John M., Jane N., Jane V., and John W., proceeding pseudonymously.

8   K.     "Court" means the United States District Court for the District of Arizona.

9   L.     "Defendants" means Motel 6 Operating L.P. and G6 Hospitality LLC,

10   doing business as Motel 6.

11   M.     "Effective Approval" means the entry of an order approving this

12   Agreement on the Final Approval Date by the Court and either: (1) the expiration of the

13   time for filing a direct appeal from the Court's approval of the Agreement, or (2) if a

14   timely direct appeal is filed, the final resolution of the appeal (including any requests for

15   rehearing and/or petitions for writ of certiorari), resulting in final judicial approval of the

16   Agreement.

17   N.     "Federal Immigration Authorities" means the following: United States

18   Department of Homeland Security Immigration and Customs Enforcement, Customs and

19   Border Patrol, Homeland Security Investigations, their officers or employees, and any

20   other employee of the Department of Homeland Security whose primary responsibility is

21   enforcement of federal immigration laws.

22   O.     "Final Approval Date" means the date the Court approves this Agreement

23   and after there has been: (a) notice to the Settlement Class and the Injunctive Relief

24   Class; (b) opportunity to opt-out of the Settlement Class with respect to monetary

25   damages; (c) opportunity to submit a timely objection to the Agreement; (d) appropriate

26   discovery regarding any such timely objections; and (e) the Final Approval Hearing.

27   P.     "Final Approval Hearing" means the hearing at which the Court considers

28   the fairness of and whether to approve this Agreement and after there has been: (a) notice

29   to the Settlement Class and the Injunctive Relief Class; (b) opportunity to opt-out of the

1   Settlement Class with respect to monetary damages; (c) opportunity to submit a timely

2   objection to the Agreement; and (d) appropriate discovery regarding any such timely

3   objections.

4        Q.     "Final Approval Order" means the order the Court enters approving the

5   Agreement after having conducted the Final Approval Hearing.

6        R.     "Franchised Location" means any lodging facility in the United States

7   operated under the "Motel 6" brand name by a third party under a franchise agreement

8   with Defendants and their respective affiliates.

9        S.     "Guest" means any Registered Guest, as defined herein, or other person

10   occupying a guestroom in any Motel 6 Location.

11        T.     "Guest Information" means the name, address, and/or other registration

12   information provided to a Motel 6 Location by a Registered Guest or Guest at the time of

13   check-in.

14        U.     "Guest List" means computer-generated Motel 6 guest lists and the Guest

15   Information contained on them.

16        V.     "Incident Report" means documentation of Guest Lists or other Guest

17   Information disclosed by a Motel 6 Location to Federal Immigration Authorities created

18   electronically at Operated Locations.

19        W.     "Injunctive Relief Class" means the definition set forth in Section VII.B.

20        X.     "Injunctive Relief Class Members" means the definition set forth in Section

21   VII.B.

22        Y.     "Motel 6 Entities" means Defendants and each of their past and present

23   employees, parents, subsidiaries, affiliates, officers, directors, agents, managers, owners,

24   insurers, successors, and assigns and those in active concert or participation with them, or

25   any of them.

26        Z.     "Motel 6 Location" means any Motel 6 branded lodging facility in the

27   United States, including Operated Locations and Franchised Locations.

28        AA.     "Operated Location" means any Motel 6 branded lodging facility in the

29   United States operated by Defendants.

1    BB.    "Preliminary Approval Date" means the date upon which the Court enters

2    an order preliminarily approving this Agreement, pending notice and opportunity to opt-

3    out of the Settlement Class with respect to monetary damages or submit objections to the

4    Agreement, and a fairness hearing.

5    CC.    "Preliminary Approval Order" means the order by the Court that

6    preliminarily approves the Agreement, pending notice and opportunity to opt-out of the

7    Settlement Class with respect to monetary damages or, with regard to the Settlement

8    Class and the Injunctive Relief Class, to submit objections to the Agreement, and a

9    fairness hearing.

10   DD.    "Primary Class" means the definition set forth in Section VII.A.1.a.

11   EE.    "Primary Class Members" means the definition set forth in Section

12   VII.A.1.a.

13   FF.    "Registered Guest" means any person who provided his or her Guest

14   Information to a Motel 6 Location at the time of check-in and whose information was

15   stored in Motel 6's guest registration system.

16   GG.    "Release" means the release of claims as set forth in Section VIII of the

17   Agreement.

18   HH.    "Releasing Class" means the Primary Class, Class 2 and the Injunctive

19   Relief Class, collectively.

20   II.    "Settlement Administrator" means Martin F. Scheinman, Esq. or any

21   successor(s) agreed to by the parties to this Agreement.

22   JJ.    "Settlement Class" means the Primary Class and Class 2, collectively.

23   KK.    "Washington Action" means the action styled *State of Washington v. Motel*

24   *6 Operating, L.P. et al.*, No. 18-2-00283-4 SEA in the Superior Court of the State of

25   Washington, King County.

26   LL.    "Washington Settlement" means the agreement to settle the action styled

27   *State of Washington v. Motel 6 Operating, L.P. et al.*, No. 18-2-00283-4 SEA in the

28   Superior Court of the State of Washington, King County, as set forth in the Consent

29   Decree entered in that action on April 26, 2019.

1    **IV.**     **LITIGATION BACKGROUND**

2        A.      On January, 24, 2018, eight Plaintiffs filed a class-action complaint in the

3 United States District Court for the District of Arizona.  Plaintiffs allege that Defendants

4 employed a corporate policy and/or practice to provide Guest Information to agents of

5 Immigration and Customs Enforcement ("ICE") and/or other Federal Immigration

6 Authorities.  Plaintiffs challenge Defendants' alleged policy and/or practice as

7 unauthorized disclosures of private information and as discriminatory, unconstitutional, a

8 violation of state laws protecting consumers, and a violation of Defendants' privacy

9 policy.

10        B.      On May 8, 2018, Defendants filed an answer and defenses to the class

11 action complaint and denied any wrongdoing or violation of the law.

12        C.      On June 15, 2018, the Parties engaged in a day-long mediation before

13 Martin F. Scheinman, Esq., a professional mediator.  The mediation resulted in a tentative

14 settlement.

15        D.      On July 6, 2018, the Parties filed a joint certification with the Court that

16 indicated that the Parties agreed to a tentative settlement that would resolve the

17 Plaintiffs', Class Members', and Injunctive Relief Class Members' claims against

18 Defendants.

19        E.      On November 2, 2018, the Parties filed a Joint Motion for Preliminary

20 Approval of Class Action Settlement (the "Joint Motion") with the Court.

21        F.      On January 29, 2019, the Parties appeared before the Court for a hearing on

22 the Joint Motion, at which time the Court expressed certain questions and concerns, and

23 allowed the Parties an additional period of time to address those questions and concerns

24 in a new motion to be filed in support of the settlement agreement.

25        G.      On April 3, 2019, the Parties engaged in an additional day-long mediation

26 before Mr. Scheinman, which resulted in certain agreed upon changes to the complaint

27 and settlement.

H.      On June 5, 2019, Plaintiffs filed, with Defendants' consent, an Amended Class Action Complaint for Declaratory and Injunctive Relief (the "Amended Complaint").

## V.     JURISDICTION

The Parties stipulate that:  (i) the Court has jurisdiction over the Parties and subject matter of the Action; (ii) if the claims asserted in the Action were proven, the Court would have the authority to grant the equitable relief and monetary damages set forth in this Agreement; (iii) venue is proper in the United States District Court for the District of Arizona; and (iv) the Court may retain jurisdiction of the Action during the duration of the Agreement solely for the purposes of entering all orders that may be necessary to implement the relief provided.

## VI.     CONSENT DECREE, EFFECTIVE DATES AND DURATION OF EQUITABLE PROVISIONS

### A.     Effective Dates and Duration

Unless otherwise provided, the equitable provisions addressed in Sections X and XI in this Agreement are effective immediately upon the Final Approval Date and shall remain in effect for three years (36 months) from that date.

### B.     Consent Decree

In addition to the Final Approval Order, the Parties shall request in connection with the Final Approval Hearing that the Court enter a consent decree containing Sections V, VI, X, and XI of this Agreement, or substantively identical provisions.  The consent decree shall be operative for the term set forth in Section VI.A of this Agreement.  The consent decree shall also contain a provision terminating it automatically on the election of either Party under Section IX.F of this Agreement.

## VII.     SETTLEMENT CLASSES

### A.     Monetary Damages

1.     For purposes of the monetary damages provided in this Agreement, the Parties shall request that the Court conditionally certify a "Primary Class" and "Class

1  2" under Federal Rule of Civil Procedure 23(b)(3) as further defined in sections
2  VII.A.1.a.-b below.

3          a.      A Primary Class, consisting of all persons who were
4  Registered Guests at a Motel 6 Location in the United States during the Class Period, and
5  whose Guest Information was provided to Federal Immigration Authorities by a Motel 6
6  Location in the United States, each of whom shall be a "Primary Class Member," except
7  those who file a timely request to opt-out of the Settlement Class.

8          b.      Class 2, consisting of all Guests at a Motel 6 Location in the
9  United States during the Class Period who were not Registered Guests, and were
10 questioned, interrogated, detained, and/or placed in immigration removal proceedings by
11 Federal Immigration Authorities as a result of a Motel 6 Location's disclosure of Guest
12 Information to Federal Immigration Authorities, each of whom shall be a "Class 2
13 Member," except those who file a timely request to opt-out of the Settlement Class.

14 **B.      Equitable Relief**
15         For purposes of the equitable relief provided in this Agreement, the Parties shall
16 request that the Court certify an Injunctive Relief Class under Federal Rule of Civil
17 Procedure Rule 23(b)(2), defined as all persons who were Guests at a Motel 6 Location in
18 the United States during the Class Period, and whose Guest Information was provided to
19 Federal Immigration Authorities by a Motel 6 Location in the United States, each of
20 whom shall be an "Injunctive Relief Class Member."

21 **C.      Exclusions**
22         Excluded from the Releasing Class are the Motel 6 Entities and all federal
23 governmental entities and personnel, including Federal Immigration Authorities.

24 **VIII.  RELEASE OF CLAIMS**

25 **A.      Binding and Exclusive Nature of Settlement Agreement**
26         Upon Effective Approval of the Settlement, the Parties, Class Members, and
27 Injunctive Relief Class Members shall be bound by this Agreement and shall have
28 recourse exclusively to the benefits, rights, and remedies provided in this Agreement.  No
29 other action, demand, suit, or other claim may be pursued by the Class Members or

1   Injunctive Relief Class Members against the Motel 6 Entities with respect to the Released

2   Claims.

3       **B.    Release of Claims by the Releasing Class**

4       Upon Effective Approval of the settlement, the Motel 6 Entities shall be fully

5   released and forever discharged from any and all individual and/or class-wide claims,

6   demands, charges, complaints, rights and causes of action of any kind by the Class

7   Representatives, Plaintiffs, the Releasing Class, each member of the Releasing Class

8   (hereafter collectively "Releasors"), and the Releasor's estates (whether or not any

9   Releasor or Releasor's estate has objected to the settlement or makes a claim for

10  monetary damages described in Section XII) that arise out of or relate to conduct within

11  the Class Period concerning the provision of Guest Information to Federal Immigration

12  Authorities by a Motel 6 Location, including, but not limited to, any conduct alleged and

13  cause of action asserted in this action, or that could have been asserted or alleged in this

14  action, and arising out of the facts alleged in this action (including, but not limited to

15  alleged race and national-origin discrimination, consumer protection violations, privacy

16  violations, constitutional claims, contract or tort claims and any other federal, state, or

17  local law claims) (collectively "Released Claims").  Releasors and their estates shall not,

18  after Effective Approval of this Agreement, seek to establish liability against any Motel 6

19  Entity based, in whole or in part, upon any of the Released Claims or any conduct at issue

20  in the Released Claims.  This Release is final and shall survive the expiration of the

21  Agreement's terms.

22      **C.    Waiver of Unknown Claims**

23      On Effective Approval, Releasors and the Releasor's estates shall be deemed to

24  have, and by operation of this Agreement shall have, with respect to the Released Claims,

25  expressly waived the benefits of any statutory provisions or common law rule that

26  provides, in substance, that a general release does not extend to claims that the party does

27  not know or suspect to exist in its favor at the time of executing the release, which if

28  known by it, would have materially affected its settlement with any other party.  In

29  particular, but without limitation, Releasors and Releasor's Estates waive the provisions

1   of California Civil Code § 1542 (or any like or similar statute or common law doctrine),

2   and do so understanding the significance of that waiver.  California Civil Code §1542

3   provides:

4         A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE

5         CREDITOR OR RELEASING PARTY DOES NOT KNOW OR

6         SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

7         EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR

8         HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER

9         SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

10       **D.**     **No Bar to Future Claims**

11       Nothing in this Agreement shall be construed to bar any claims of any Releasor

12   that arise after Effective Approval.

13       **E.**     **Assumption of Risk**

14       In entering into this Agreement, the Parties assume the risk of any mistake of fact

15   or law.  If either Party should later discover that any fact that the Party relied upon in

16   entering into this Agreement is not true, or that the Party's understanding of the facts or

17   law was incorrect, the Party shall not be entitled to modify, reform, or set aside this

18   Agreement, in whole or in part, as a result.

19       **F.**     **No Collateral Attack**

20       This Agreement shall not be subject to collateral attack by any Releasor at any

21   time after Effective Approval.

22   **IX.**     **COURT APPROVAL OF SETTLEMENT**

23       **A.**     **Preliminary Approval**

24       As soon as practicable after the execution of this Agreement, and no later than

25   June 28, 2019, the Parties shall apply for entry of the Preliminary Approval Order.  The

26   Preliminary Approval Order shall include provisions: (a) preliminarily approving this

27   Settlement and finding this Settlement sufficiently fair, reasonable and adequate to allow

28   Notice to be disseminated to the Settlement Class and the Injunctive Relief Class; (b)

29   approving the form, content, and manner of the Notice; (c) setting a schedule for

1 proceedings with respect to Final Approval of this Settlement; and (d) staying the Action,

2 other than such proceedings as are related to this Settlement.

3       **B.**      **CAFA Notice**

4       Within ten (10) days of the lodging of this Agreement and the motion for

5 preliminary approval of the Settlement, Defendants shall provide an amended CAFA

6 notice as required under 28 U.S.C. § 1715.  CAFA notice shall be provided to the

7 Attorney General of the United States and the Attorneys General of each state in which

8 Class Members and Injunctive Relief Class Members reside.  CAFA notice shall be

9 mailed, can be in an electronic or disk format, and shall include to the extent then

10 available and feasible: (1) the Amended Complaint in the Action; (2) the motion for

11 preliminary approval of the Agreement, which shall include the proposed Final Approval

12 Hearing date and shall confirm that there are no additional agreements among the Parties

13 not reflected in the Settlement; (3) the proposed forms of Notice; (4) this Agreement; and

14 (5) a reasonable estimate of the numbers of Class Members and Injunctive Relief Class

15 Members residing in each state and the estimated proportionate share of the claims of

16 such members to the entire settlement.  The Parties agree that this CAFA notice shall be

17 sufficient to satisfy the terms of 28 U.S.C. § 1715.

18       **C.**      **Objections to Settlement**

19       Any Class Member or Injunctive Relief Class Member wishing to object or to

20 oppose the approval of this Agreement shall object in writing in the manner set forth in

21 Section XII.I.1.

22       **D.**      **Motion for Final Approval and Response to Objections**

23       The Parties shall file with the Court their motion for final settlement approval on a

24 date that is no later than twenty-one (21) days before the date of the Final Approval

25 Hearing.  The Parties will file with the Court a reply brief in support of Final Approval

26 that, *e.g.,* responds to any objections filed no later than seven (7) days before the date of

27 the Final Approval Hearing.

1        **E.      Final Approval Hearing**

2        The Parties shall request that the Court, on the date set forth in the Preliminary

3  Approval Order or on such other date that the Court may set (but not earlier than 150

4  days from the date of entry of the Preliminary Approval Order), conduct a Final Approval

5  Hearing to: (a) determine whether to grant Final Approval to this Agreement; and

6  (b) consider any timely objections to this settlement and the Parties' responses to such

7  objections.  At the Final Approval Hearing, the Parties shall ask the Court to give Final

8  Approval to this Agreement.  If the Court grants Final Approval to this Agreement, the

9  Parties shall ask the Court to enter a Final Approval Order that approves the Agreement,

10  authorizes entry of a final judgment, and dismisses the action with prejudice.

11        **F.      Disapproval, Cancellation, Termination, or Nullification of Settlement**

12        1.      Each Party shall have the right to terminate this Agreement if either:

13  (i) the Court declines to grant Preliminary Approval or Final Approval to this Agreement

14  without material modification of the Agreement; or (ii) a higher court reverses Final

15  Approval by the Court, and the Court thereafter declines to enter a further order or orders

16  approving Agreement on the terms set forth here.  If a Party elects to terminate this

17  Agreement under this paragraph, that Party must provide written notice to the other

18  Party's counsel and the Court within thirty (30) days of the occurrence of the condition

19  permitting termination.

20        2.      If this Agreement is terminated under Section IX.F.1, then: (i) this

21  Agreement shall be rendered null and void; (ii) this Agreement and all negotiations and

22  proceedings relating to it shall be of no force or effect, and without prejudice to the rights

23  of the Parties; (iii) all Parties shall be deemed to have reverted to their respective status in

24  the Action as of the date and time immediately preceding the execution of this

25  Agreement; and (iv) except as otherwise expressly provided, the Parties shall stand in the

26  same position and shall proceed in all respects as if this Agreement and any related orders

27  had never been executed, entered into, or filed.

**X.    GENERAL EQUITABLE PROVISIONS**

      **A.    General Injunctive Provisions**

          1.    Effective immediately upon the Final Approval Date and for three years (36 months) from that date, Defendants shall implement and maintain the following policies and internal procedures ("the Policy"):

          a.    Defendants shall establish and maintain a 24-Hour Hotline to assist employees at Motel 6 Entities when they receive any request for Guest Information from Federal Immigration Authorities.

          b.    Defendants shall respond to requests for information from Federal Immigration Authorities as follows:

          i.    Defendants shall not share Guest Information with Federal Immigration Authorities without a judicially enforceable warrant or subpoena, except where the Federal Immigration Authority articulates a credible reason to believe that a Guest, employee, or other individual is in imminent danger.  For purposes of this subsection, a "credible reason" is a particularized concern related to the safety and well-being of an individual currently on the property.

          ii.    With respect to all other warrants or subpoenas presented by Federal Immigration Authorities, Defendants shall not share Guest Information with Federal Immigration Authorities until such warrants or subpoenas have been sent to Defendants' legal department or other individuals designated by Defendants, who will have been trained to comply with this Policy and to address requests from Federal Immigration Authorities, and until such persons authorize the disclosure of Guest Information.

          iii.    Any of Defendants' employees with questions about this Policy will be trained to call the 24-Hour Hotline.

          iv.    Defendants shall establish a brand standard requiring that Franchised Locations adopt and implement the policies and procedures described in Section X.A.1.b.i.-ii.

1              v.      Defendants shall create an online mechanism for any

2 person at a Motel 6 Location to submit a report when he or she believes that Guest

3 Information has been provided to Federal Immigration Authorities or that this Policy has

4 been violated in any manner (a "Compliance Complaint").  Any person who submits a

5 Compliance Complaint may do so anonymously.

6            c.      Defendants shall provide the following training:

7              i.      For each Operated Location employee who has the

8 ability to make Guest Information available, training to understand the Policy and their

9 responsibilities with regard to the Policy, including the purpose and procedures regarding

10 Defendants' 24-Hour Hotline, such as when it is appropriate and necessary to contact

11 Defendants' 24-Hour Hotline.

12              ii.      The training described in this section may be held in

13 conjunction with other business, at Defendants' discretion, and may be organized

14 geographically in such fashion as Defendants deem appropriate.

15      **B.**      **Dispute Resolution and Enforcement Procedures**

16      1.      The Parties agree to the appointment of Martin F. Scheinman, Esq.,

17 or any successor(s) agreed to by the Parties to this Agreement, as Settlement

18 Administrator.  The Settlement Administrator may be removed at the joint written request

19 of Class Counsel and Defendants, or by order of the Court upon motion of any Party and

20 a showing of good cause that Mr. Scheinman should no longer serve as Settlement

21 Administrator.  In the event that Mr. Scheinman becomes unavailable to serve as

22 Settlement Administrator for any reason, the Parties will make a good faith effort to

23 select on a joint basis a new Settlement Administrator.  If the Parties are unable to reach

24 agreement as to a successor Settlement Administrator within forty-five (45) days

25 following the date Mr. Scheinman becomes unavailable to serve as Settlement

26 Administrator, the Court shall appoint a successor Settlement Administrator upon motion

27 of Class Counsel or Defendants.  Class Counsel or Defendants may nominate persons for

28 consideration as a successor Settlement Administrator to the Court.  The Parties shall

each have the right to interview any nominated person, and to present argument and evidence to the Court regarding the selection of the successor Settlement Administrator.

    2. The Settlement Administrator shall have authority to resolve all disputes arising under the Agreement, subject to limitations and standards set forth in the Agreement.  The Settlement Administrator in the course of resolving disputes shall have authority to modify the Consent Decree, subject to an appeal by either Party to the Court as provided in Sections X.B.4.-7.

    3. The Parties shall use Best Efforts to resolve promptly any differences or any disputes regarding the interpretation or implementation of this Agreement.

    4. Each Party shall have the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Agreement subject to limitations and standards set forth in the Agreement.

      a. If either Party has good reason to believe that a legitimate dispute exists, the initiating Party shall first promptly give written notice to the other Party, including: (a) a reference to all specific provisions of the Agreement that are involved; (b) a statement of the issue; (c) a statement of the remedial action sought by the initiating Party; and (d) a brief statement of the specific facts, circumstances and any other arguments supporting the position of the initiating Party;

      b. Within thirty (30) days after receiving such notice, the non-initiating Party shall respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position, including the facts and arguments upon which it relies in support of its position;

      c. The Parties shall undertake good-faith negotiations, including meeting and conferring by telephone or in person and exchanging relevant documents and/or other information, to attempt to resolve the issues in dispute or of alleged noncompliance;

      d. The Settlement Administrator, upon motion, may permit a Party to take post-settlement discovery as provided by the Federal Rules of Civil

1   Procedure, but only as to matters relevant to the underlying claim of breach, if the

2   Settlement Administrator determines that the informal exchange of documents or

3   information has not been sufficient to allow the Party to present the dispute upon a

4   factual record adequate for a fair determination of the issue;

5          e.     If the Parties' good-faith efforts to resolve the matter have

6   failed, and after written notice of an impasse by the initiating Party to the non-initiating

7   Party, the initiating Party may file a motion with the Settlement Administrator, with a

8   supporting brief, requesting resolution of the dispute or the issues of non-compliance,

9   provided that such motion shall be limited to the dispute(s) and/or issue(s) as to which the

10  Parties have met and conferred as described here;

11         f.     The non-moving Party will have fifteen (15) days to respond

12  to any such motion;

13         g.     The Settlement Administrator shall attempt within fifteen (15)

14  days after filing of the final brief to resolve the dispute and may schedule a hearing or

15  other proceeding, including an evidentiary hearing, to resolve the matter; and

16         h.     Within thirty (30) days of any hearing, the Settlement

17  Administrator shall issue a written determination, including findings of fact if requested

18  by any Party.

19         5.     The provisions of this Section do not prevent any Party from

20  promptly bringing an issue directly before the Court when exigent facts or circumstances

21  require immediate Court action to prevent a serious violation of the terms of this

22  Agreement, which otherwise would be without meaningful remedy.  The moving papers

23  shall explain the facts and circumstances that necessitate immediate action by the Court.

24  Absent a showing of exigent facts or circumstances, the Court shall refer the matter to the

25  Settlement Administrator to resolve in accordance with procedures set forth above.  If

26  any such matter is brought before the Court requesting immediate action, the other Party

27  shall be provided with appropriate actual notice, and an opportunity to be heard on the

28  motion, under the Local Rules of the Court and the Federal Rules of Civil Procedure.

29  The Court in its discretion may set such procedures for emergency consideration as are

appropriate to the particular facts or circumstances, but no such matter may be heard or considered on an *ex parte* basis.

        6.     Any Party who disagrees with a decision of the Settlement Administrator may seek relief from the Court within fourteen (14) days of receipt of notice of the decision by the Settlement Administrator.  Any such request for relief shall be brought by motion under the Local Rules of the Court and Federal Rules of Civil Procedure.  A Party may seek any remedy provided by law, provided that such remedy is consistent with the provisions of this Agreement.

        7.     The Parties agree that, for any dispute decided by the Settlement Administrator under Section X.B and which decision would require modification of the Consent Decree entered by the Court:

        a.     The Parties shall cooperate in jointly requesting the Court to modify the Consent Decree to reflect the resolution of said dispute; or

        b.     The Party disagreeing with such decision shall, as part of any request for relief made under Section X.B.6, request that the Consent Decree be modified or affirmed, as appropriate.

        c.     Nothing herein shall be construed as authorizing the Settlement Administrator to require the Court to alter the terms of its Consent Decree, or to disregard the clear and unambiguous language of the Consent Decree.

        8.     Only Plaintiffs or Defendants shall have standing to move the Court to enforce, apply, or modify this Agreement.  Any individual concerned about Defendants' compliance with this Agreement may so notify Class Counsel and request that they examine Defendants' compliance and seek such relief, if any, as may be appropriate.  In the event that any Party seeks to utilize the dispute resolution procedure, then each Party shall bear its own attorneys' fees, costs and expenses for all work performed through resolution by the Settlement Administrator.  In the event that any Party seeks to appeal any decision of the Settlement Administrator, then the prevailing party in such matter shall be entitled to recover reasonable attorneys' fees, costs and expenses incurred in such appeal from the other Party.  Whether and to what extent any

Party is a prevailing party and awarded fees and expenses shall be determined in the sole and absolute discretion of the Court.

**XI.   RECORDKEEPING AND REPORTING**

      **A.   Documents to be Preserved For the Duration of the Agreement**

      Defendants shall retain the following records for the period set forth in Section VI.A of this Agreement or as required by state or federal law, whichever is longer:

            1.   Compliance Complaints, as defined in Sections X.A.1.b.v;

            2.   Incident Reports; and

            3.   Logs of any calls made by Defendants' employees (including employees at Operated Locations) to the 24-Hour Hotline referenced in Section X.A.1.a.

      **B.   Access to Documents**

      All documents required to be maintained by the express terms of the Agreement, and all documents that are provided to the Settlement Administrator, Class Counsel, or the Court under the terms of the Agreement, are and shall be treated as confidential business records.  Neither Class Counsel, nor the Settlement Administrator, nor the Claims Administrator nor CDM, shall divulge any such documents to any third party unless so ordered by a court after notice to Defendants and an opportunity for Defendants to object to such disclosure and to be heard.  Upon expiration of this Agreement, Class Counsel, the Claims Administrator, and the Settlement Administrator shall promptly destroy any and all documents in any format Defendants furnished under this Agreement. This provision shall not prevent a Party from filing otherwise confidential documents with the Court, provided that, either: (a) such documents are filed under seal; or (b) Class Counsel give ten (10) days advance notice to Defendants, to permit opportunity to seek a protective order sealing such documents.

      **C.   Compliance and Status Conference**

      During the period set forth in Section VI.A of this Agreement, the Parties shall conduct an annual status conference with the Settlement Administrator, with a report to the Court following the status conference to discuss the status of implementation of the Agreement.  The Parties shall be represented at the status conference.  No Party shall file

1  any document with the Settlement Administrator in conjunction with the status

2  conference, unless directed to do so by the Settlement Administrator.

3  **XII.   MONETARY RELIEF AND CLAIMS PROCEDURE**

4  **A.   Persons Entitled to Monetary Damages**

5         1.     The Claims Administrator shall determine that a claimant is a

6  member of the Primary Class if it can reasonably be determined from Defendants'

7  records and/or the information provided in the claim form that the claimant was a

8  Registered Guest at a Motel 6 Location in the United States during the Class Period

9  whose Guest Information was provided to Federal Immigration Authorities by a Motel 6

10  Location in the United States.

11         2.     The Claims Administrator shall determine that a claimant is a

12  member of Class 2 if it can reasonably be determined from Defendants' records and/or

13  the information provided in the claim form that the claimant was a Guest at a Motel 6 in

14  the United States during the Class Period who was not a Registered Guest, and was

15  questioned, interrogated, detained, and/or placed in immigration removal proceedings by

16  Federal Immigration Authorities as a result of a Motel 6 Location's disclosure of Guest

17  Information to Federal Immigration Authorities.

18  **B.   The Settlement Amount**

19         1.     The total amount available to make awards to Class Members shall

20  be $10,000,000.00 (Ten Million Dollars) (the "Settlement Amount").  Under no

21  circumstances shall the Claims Administrator make payments to Class Members that in

22  total exceed the Settlement Amount.

23         2.     If the total amount due to valid claimants exceeds the Settlement

24  Amount, the amount to be paid to each valid claimant shall be reduced proportionally so

25  that the total does not exceed the Settlement Amount.

26         3.     If the total amount due to valid claimants is less than the Settlement

27  Amount, the remaining funds shall be distributed, within thirty (30) days of the last

28  payment to a Class Member, as follows:

a.  The first $500,000 (Five Hundred Thousand Dollars) shall be returned to Defendants;

b.  The next $500,000 shall be deposited in a *cy pres* fund, as set forth in Section 4 below (the "*Cy Pres* Fund");

c.  The next $500,000 shall be returned to Defendants;

d.  The next $500,000 shall be deposited to the *Cy Pres* Fund;

e.  The next $500,000 shall be returned to Defendants; and

f.  All remaining amounts, if any, shall be deposited in the *Cy Pres* Fund.

4.    All amounts deposited in a *Cy Pres* Fund in accordance with Section XII.B.3, above, shall be distributed as follows, subject to Court approval:

a.  Florence Immigrant & Refugee Rights Project (FIRRP)

    i.  FIRRP is a 501(c)(3) nonprofit legal service organization providing free legal education, services, and representation to men, women, and unaccompanied children in immigration custody in Arizona and assistance to attorneys.

    ii.  FIRRP is the only organization in Arizona that provides free legal and social services to detained men, women, and children under threat of deportation/removal.

    iii.  The Parties have agreed to allocate thirty-five percent (35%) of the *Cy Pres* Fund to FIRRP.

b.  Northwest Immigrant Rights Project (NIRP)

    i.  NIRP promotes justice by defending and advancing the rights of immigrants through direct legal services, systemic advocacy, and community education.

    ii.  NIRP's legal services are critical to helping thousands of immigrants in Washington State navigate the complexities of the United States immigration system so they can apply for asylum or other forms of immigration protection.

iii.     The Parties have agreed to allocate thirty-five percent (35%) of the *Cy Pres* Fund to NIRP.

    c.  National Immigration Justice Center (NIJC)

        i.     NIJC is committed to protecting the rights for the women, men, children and families who flee to the United States seeking safety and security, as well as those who have long been contributing members of our communities.

        ii.     For more than 30 years, NIJC has provided quality low-cost immigration legal services to over 10,000 individuals per year throughout the United States.

        iii.     The Parties have agreed to allocate fifteen percent (15%) of the *Cy Pres* Fund to NIJC.

    d.  TheDream.US

        i.     TheDream.US is the nation's largest college access and success program for DREAMers.  TheDream.US works with a community of partners to provide students who have lived most of their lives in the United States, but are not citizens, the opportunity to attend and succeed in high education. TheDream.US's approach is designed to scale and deliver relevant and sustainable impact through financial support, community building, and academic guidance.

        ii.     The Parties have agreed to allocate fifteen percent (15%) of the *Cy Pres* Fund to TheDream.US.

        e.     Should the Court refuse to approve one or more of the proposed *cy pres* recipients, the approved recipients shall each receive their proportional share of the funds that would have been paid to the unapproved recipient(s).  Should the Court refuse to approve any *cy pres* recipient, the unclaimed funds shall be deposited into an escrow account while the Court and/or the Parties determine who should receive them.

**C.     Awards of Monetary Damages to Class Members**

    1.     Each Class Member may be awarded the following amounts, which may be aggregated, subject to any reduction required by Section XII.C.2 of this Agreement:

     a.  If the claimant is a Registered Guest, $75 for the disclosure of the claimant's Guest Information;

     b.  If the claimant experienced an encounter with Federal Immigration Authorities as a result of the disclosure of Guest Information by a Motel 6 Location, then:

        i. If the claimant was arrested by Federal Immigration Authorities, $5,000;

        ii. If the claimant was detained at least one full night, $5,000 per night in detention;

        iii. If the claimant was placed in immigration removal proceedings, $10,000;

        iv. If the claimant was detained at least one full night and/or was placed in immigration removal proceedings, and had minor children or other dependents at the time the claim arose, $10,000 per dependent;

        v. If the claimant incurred legal fees to defend his or her presence in the United States, the actual amount of the fees incurred and documented, not to exceed $200,000;

        vi. If the claimant incurred other out-of-pocket expenses associated with participation in immigration proceedings, the actual amount of the expenses incurred and documented, not to exceed $25,000; and

     c.  Under no circumstances shall the total award to any Class Member exceed $200,000.

    2.  For the avoidance of doubt, nothing in this Agreement shall preclude any Class Member from obtaining compensation under the Washington Settlement.

1   However, should the total value of valid claims determined by the Claims Administrator

2   for the Settlement Class (the "Total Value") exceed the Settlement Amount, those Class

3   Members who received compensation from the Washington Settlement (the "Washington

4   Class Members") shall have their awards in this matter reduced as follows:

5          a.   If the total amount paid to the Washington Class Members from

6               the Washington Settlement is equal to or more than the

7               difference between the Total Value and the Settlement Amount,

8               then the amount paid to each Washington Class Member from

9               the Settlement Amount shall be reduced by the amount each

10              received from the Washington Settlement; and

11         b.   If the total amount paid to the Washington Class Members from

12              the Washington Settlement is less than the difference between the

13              Total Value and the Settlement Amount, then the amount paid to

14              each Washington Class Member from the Settlement Amount

15              shall be reduced on a pro rata basis until the Total Value equals

16              the Settlement Amount.

17         3.   Notwithstanding Section XII.C.2, should the Court conclude that

18  anything in this section serves to treat class members inequitably, this Section XII.C.2

19  shall have no force and effect and the rest of the Agreement shall operate as if this

20  paragraph were not included.

21     **D.     Costs**

22         1.   Defendants shall pay the costs of notice to Class Members and

23  Injunctive Relief Class Members, and claims administration (the "Administration

24  Costs"), not to exceed $1,000,000.00.  The Claims Administrator and the Settlement

25  Administrator will, respectively, conduct class notice and class administration in

26  consultation with the Parties.  The Claims Administrator will invoice Defendants directly

27  for its fees and costs.

28         2.   Defendants shall also pay the costs and fees incurred as a result of

29  the retention of CDM, pursuant to the terms of the agreement among CDM, the Claims

1  Administrator, MALDEF, and G6, which amounts shall not be included in the cap on
2  Administration Costs above.

3        **E.**     **Funding of the Settlement Amount and Costs**

4        1.    The Claims Administrator will open and administer an interest-
5  bearing account ("Settlement Account") designated by Class Counsel and with a unique
6  Taxpayer Identification Number, with earned interest added to the Settlement Amount.

7        2.    After Effective Approval and within seven (7) days after the Claims
8  Administrator has informed Defendants in writing that it is prepared to distribute the
9  payments to the members of the Settlement Class (or whichever is later), Defendants will
10  wire the following amounts to the Settlement Account:

11       (a) $10,000,000 for the Settlement Amount; and

12       (b) $1,000,000 for the Administration Costs, or whichever lesser amount
13       the Class Administrator has reported as the total Administration Costs; and

14       (c) $500,000 for payment of the Class Counsel Payment, as defined in
15       Section XIII of this Agreement.

16        3.    Upon payment of agreed upon fees to CDM and to the Settlement
17  Account of the amounts set forth in Section XII.E.2, Defendants shall have no further
18  monetary obligation to Releasors, including no obligation to pay any funds for
19  distribution to Class Representatives or members of the Settlement Class; no obligation to
20  pay costs of mailed notices and expenses associated with the claims procedure; no
21  obligation to pay any amount to Class Counsel; no obligation to pay any other amount to
22  the Claims Administrator or Settlement Administrator; and no obligation to pay any other
23  settlement administration costs.

24        **F.**     **Notice**

25        1.    Mailed Notice:  Within twenty (20) days following the Preliminary
26  Approval Date, Defendants shall provide the Claims Administrator and CDM with the
27  full names and last known addresses and phone numbers, to the extent available in
28  Defendants' records, of all Guests whom Defendants have identified as potential Class

1    Members, in Excel format.  Within twenty (20) days following the Preliminary Approval

2    Date, Class Counsel shall provide the Claims Administrator with a computer readable list

3    in Excel format of the Plaintiffs and all known potential Class Members and their mailing

4    addresses.  Prior to the mailing of the notices, the Claims Administrator will combine

5    these lists of potential Class Members received from Defendants and Class Counsel and

6    update any new address information for potential Class Members as may be available

7    through the National Change of Address system.  The Claims Administrator shall

8    determine through a computer database search the most recent address that may be

9    obtained for each person on the combined list of potential Class Members.  Within sixty

10   (60) days of the Preliminary Approval Date, the Claims Administrator shall mail, via first

11   class postage, notice of class settlement, in both English and Spanish, in the form

12   approved by the Court in the Preliminary Approval Order, to all known potential Class

13   Members at their last known address and at the most recent address that may have been

14   obtained through the computer database search.

15              2.     Published Notice:  The Claims Administrator shall cause to be

16   published the notice of the class settlement in the form approved by the Court in the

17   Preliminary Approval Order on Class Counsel's Facebook and Twitter accounts (in

18   English and Spanish) and on the website established by the Claims Administrator.

19   Within twenty (20) days of the Preliminary Approval Date, the Claims Administrator

20   shall enable the website referenced in the previous sentence.  Within thirty (30) days of

21   the Preliminary Approval Date, Class Counsel shall cause the Facebook and Twitter

22   notices to be published on Class Counsel's Facebook and Twitter feeds.  The Claims

23   Administrator shall also conduct a targeted social media campaign and targeted search

24   engine advertisement campaign to provide notice to other who may be Class Members or

25   Injunctive Relief Class Members.

26              3.     Class Counsel shall be responsible for all Spanish translations of the

27   notice materials.

1    **G.     Best Notice Practicable**

2        The Parties agree, and the Preliminary Approval Order shall state, that compliance

3    with the procedures described in Section XII.F is the best notice practicable under the

4    circumstances and shall constitute due and sufficient notice to the Settlement Class and

5    the Injunctive Relief Class of the pendency of the Action, certification of the Settlement

6    Class and the Injunctive Relief Class, the terms of the Agreement, and the Final Approval

7    Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the

8    United States Constitution, and any other applicable law.

9    **H.     Inquiries from Class Members**

10        It shall be the responsibility of Class Counsel to establish procedures for receiving

11    and responding to inquiries from Class Members and Injunctive Relief Class Members

12    with respect to this Agreement.  Neither Defendants nor Defendants' counsel are required

13    to respond to inquiries from Class Members or Injunctive Relief Class Members with

14    respect to this Agreement, except to refer inquiries to Class Counsel.

15    **I.     Objections and Exclusions**

16        1.     Objections

17            a.     Class Members and Injunctive Relief Class Members

18    objecting to the terms of the Agreement must do so in writing at least thirty (30) days

19    prior to the scheduled Final Approval Hearing.  The written objection must be filed with

20    the Court thirty (30) days prior to the scheduled Final Approval Hearing, as specified in

21    the Preliminary Approval Order.

22            b.     The written objection must include (1) a detailed statement

23    with specificity of the reasons for the objection; (2) the objecting Class Member's or

24    Injunctive Relief Class Member's name, address, and telephone number; (3) the date and

25    location of the Operated Location at which the objecting Class Member or Injunctive

26    Relief Class Member stayed; (4) the circumstances (if any) in which the Class Member or

27    Injunctive Relief Class Member was questioned, interrogated, detained, and/or placed in

28    immigration removal proceedings by Federal Immigration Authorities; (5) whether the

29    objection applies only to the objector, to a specific subset of the class, or to the entire

1    class; and (6) any other requirements set forth in the notices described in Section XII.F.

2    Any Class Member or Injunctive Relief Class Member that fails to file a timely written

3    objection that meets the requirements of this Section XII.I.1, or any Class Member or

4    Injunctive Relief Class Member who submits a valid request for exclusion shall have

5    waived the right to object and shall have no right to file an appeal relating to the approval

6    of this settlement.

7               2.     Exclusions

8                      a.     Class Members may exclude themselves, or opt-out, of the

9    Settlement Class.  Any request for exclusion must be in the form of a written "Opt-out"

10    statement sent to the Claims Administrator.  Information on how to opt-out of the

11    Settlement Class shall be made available by the Claims Administrator.  A person wishing

12    to opt-out must sign a statement which includes the following language:

13          I understand that I am requesting to be excluded from the class monetary
14          settlement and that I will receive no money from the settlement entered into
15          by Motel 6.  I understand that if I am excluded from the class monetary
16          settlement, I may bring a timely separate legal action seeking damages, but
17          may receive less than what I would have received if I had filed a claim
18          under the class monetary settlement procedure in this case, including
19          possibly receiving nothing.  I also understand that I may not seek exclusion
20          from the class for injunctive relief and that I am bound by the injunctive
21          provisions of the Agreement entered into by Motel 6.

22                      b.     A Class Member choosing to opt-out of the Settlement Class

23    shall sign and date the opt-out statement and file it with the Court thirty (30) days prior to

24    the scheduled Final Approval Hearing, as specified in the Preliminary Approval Order.

3.     Rescission of Class Member Opt-Outs

a.     The Parties recognize that some Class Members who initially submit Opt-out forms may, upon further reflection, wish to rescind such Opt-out statements.  Class Members may rescind their Opt-out statements by submitting a "Rescission of Opt-out" statement to the Claims Administrator.  The Rescission of Opt-out statement shall include the following language:

> I previously submitted an Opt-out statement seeking exclusion from the class monetary settlement.  I have reconsidered and wish to withdraw my Opt-out statement.  I understand that by rescinding my Opt-out, I may be eligible to receive an award from the claims settlement fund and may not bring a separate legal action against Motel 6 seeking damages.

b.     A Class Member wishing to rescind his or her Opt-out from the Settlement Class shall sign and date the Rescission of Opt-out statement and file it with the Court no later than the deadline for claims filing period specified in the Preliminary Approval Order.

c.     The Claims Administrator shall retain copies of all Rescissions of Opt-out statements until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**J.     Claims Administration**

1.     The Claims Administrator shall (1) prepare and mail settlement notices and claim forms to potential Class Members; (2) establish and operate a website designed to provide information to and communication with potential Class Members and Injunctive Relief Class Members; (3) receive and evaluate claims eligibility; (4) seek additional information from claimants, when appropriate; (5) receive and file Opt-out statements and objections; (6) respond to questions from potential Class Members and Injunctive Relief Class Members; (7) implement the allocation plan; (8) maintain a toll-free number for communicating with Class Members and Injunctive Relief Class Members; and (9) perform any other duties necessary to carry out its responsibilities set forth in this Agreement.

1          2.      The Claims Administrator shall make claim forms available to

2    potential Class Members who submit oral, e-mail, or written requests for claim forms.

3    The Claims Administrator shall mail the requested claim form via first class postage

4    within two (2) business days after receiving a request.  If Defendants, or their counsel,

5    receive requests for claim forms or for information regarding the class settlement, they

6    shall refer such requestors to the toll-free number established by the Claims

7    Administrator for the purpose of administering this Agreement.  The requestors shall be

8    informed that any requests for claim forms or information should be directed to the

9    Claims Administrator.  The Claims Administrator shall retain copies of all written

10   requests for claim forms and all records of oral or e-mail requests for claim forms until

11   such time as it has completed its duties and responsibilities under this Agreement.

12         **K.**     **Submission of Claim Forms**

13         Class Members who seek monetary damages must complete a claim form and

14   cause it to be filed with the Claims Administrator by the claim filing deadline set forth in

15   the Preliminary Approval Order.  The claim form must be postmarked or submitted

16   online on or before such date in order to be considered timely.  All claim forms must be

17   signed under penalty of perjury to be considered.  Failure to file a timely claim form, for

18   any reason whatsoever, shall bar the potential Class Member from having his or her claim

19   considered and from receiving monetary damages from the Settlement Account.

20   Potential Class Members who file a claim form must notify the Claims Administrator of

21   any change of address.  A failure to notify the Claims Administrator of a change of

22   address may result in the forfeiture of a monetary award.  The Claims Administrator shall

23   be available through a toll-free line and via e-mail through the website established by the

24   Claims Administrator to respond to requests from potential Class Members for assistance

25   in completing and filing claim forms.  Class Counsel shall also be available to consult

26   with potential Class Members.

**L.      Deceased Claimants**

Claims may be filed by deceased claimants through representatives of their estate if appropriate documentation is provided.  Any claims paid to a deceased claimant shall be made payable to the estate of the deceased claimant.

**M.      Determining Eligibility**

1.      The Claims Administrator shall make the determination as to whether a claim form is complete.  If it is not complete, the Claims Administrator shall request additional information from the claimant, if it appears that such additional information would complete the claim form.  Such requests for information shall be in writing and shall specify the information necessary to complete the claim form.  The requests for information will be sent via first class mail, printed in English and Spanish, and inform the claimant that a response must be returned no later than forty-five (45) days from the date the request for information was mailed.  The claimant must provide the requested information, signed under penalty of perjury, to the Claims Administrator by mail with a postmark no later than forty-five (45) days from the date of the mailed request for information.  Such additional information shall be considered part of the original claim form and will relate back to the original filing date.  The failure of a claimant to timely respond to the request for information may result in the denial of the claim.

2.      Claimants who, for good cause shown, cannot submit the requested information to complete the claim form, must provide the requested information, signed under penalty of perjury, to the Claims Administrator by mail with a postmark no later than sixty (60) days from the date of the mailed request for information.

**N.      Late-Filed Claims**

1.      For claims received after the filing deadline, the Claims Administrator shall notify late-filing claimants that their claims are untimely and that they are not eligible for any monetary award.  The Claims Administrator shall also inform late-filing claimants that they may seek a review of the determination that they filed untimely by requesting the Claims Administrator to reconsider its determination.

1    2.    The Claims Administrator may reverse its determination that a claim

2  was not timely filed only if the claimant proves that (1) the claim form was filed on or

3  before the filing deadline and that the untimeliness determination is erroneous; or (2) that

4  he or she could not timely complete the claim form due to exceptional circumstances,

5  which includes deportation, change of address, or other events that the Claims

6  Administrator may consider.

7    **O.    Appeals of Claims Eligibility**

8    1.    Within ninety (90) days of the close of the claims filing period, all

9  ineligible claimants shall receive written notice of their ineligibility for monetary

10  damages.  Any claimants wishing to seek review of their ineligibility determinations must

11  do so by returning a written request for review to the Claims Administrator online or by

12  mail with a postmark no later than twenty-one (21) days from the date of the notice of

13  claim ineligibility.  Failure to file a timely request for review shall bar a claimant from

14  challenging a determination of ineligibility.

15    2.    The Claims Administrator shall resolve the requests for review based

16  on the written requests for review and any other documentation or written information

17  submitted by the claimant, or deemed necessary by the Claims Administrator.  The

18  Claims Administrator may seek further written information from the claimant as to the

19  basis of their request and may consider the written arguments of Class Counsel or

20  Defendants.

21    3.    The Claims Administrator shall attempt to expeditiously resolve any

22  requests for review within sixty (60) days after the filing of the request for review.  The

23  Claims Administrator's decisions shall be communicated to the claimant in writing and

24  shall be binding and nonappealable.

25    **P.    Claimant Information Provided by Defendants**

26    The Parties understand and agree that Defendants may possess information that

27  may assist in the determination of eligibility of potential Class Members for monetary

28  damages.  Defendants shall reasonably cooperate in providing such information that

29  Class Counsel or the Claims Administrator deems reasonably necessary to assist in

1   determining the eligibility of any potential Class Member for monetary damages.

2   Defendants shall attempt to provide such information within fourteen (14) days of any

3   written requests for the information.

4   **Q.      Distribution of the Monetary Damages**

5   As soon as practicable after final approval of the Agreement by the Court, the

6   Claims Administrator shall distribute the monetary damages to Class Members via first

7   class mail.  The Claims Administrator shall only issue checks in the name of the Class

8   Members unless Section XII.L is applicable.  Included with the check due to the Class

9   Member will be a statement showing the gross amount of the payment.

10  **R.      Report from Claims Administrator**

11  Within thirty (30) days of the distribution of the monies from the Settlement Fund,

12  the Claims Administrator shall furnish an accounting of all distributions from the

13  Settlement Fund to the Court with copies to Class Counsel and Defendants.

14  **XIII.  ATTORNEYS' FEES, COSTS, AND EXPENSES**

15  **A.      Settlement of Fees, Costs, and Expenses**

16  Defendants shall pay Class Counsel's reasonable attorneys' fees, litigation

17  expenses, and costs in the amount of $500,000.00 (the "Class Counsel Payment") for

18  work performed and costs and expenses incurred.  This Class Counsel Payment is made

19  in full satisfaction of any arguable obligation Defendants may have at law to pay

20  attorneys' fees, litigation expenses, and costs for and/or on behalf of the Plaintiffs, Class

21  Representatives, and the Releasing Class for any and all work performed and costs and

22  expenses incurred, except for any recovery under Section X.B.8.

23  **B.      Class Counsel Payment**

24  The Claims Administrator shall make the Class Counsel Payment from a

25  Settlement Account within fourteen (14) days following Effective Approval.  MALDEF

26  shall have sole responsibility to distribute a portion of the Class Counsel Payment to

27  other Class Counsel.  Once Defendants make the Class Counsel Payment to MALDEF,

28  no Class Counsel may assert any claim for such payments from Defendants.

1    **XIV.   Miscellaneous Provisions**

2          **A.   No Admission of Liability**

3          This Agreement does not constitute and shall not be deemed to be a finding or

4    determination by the Court, or an admission by any Party, regarding the merits, validity

5    or accuracy of any of the allegations, claims or defenses presented in the Action.  This

6    Agreement represents the compromise of disputed claims that the Parties recognize

7    would require protracted and costly litigation to determine.  Defendants deny that they

8    have engaged in any unlawful conduct of any kind associated with the claims alleged in

9    the Action, and Defendants' entry into this Agreement is not and may not be used by any

10   person in this action or any other proceeding as an admission or evidence that any Motel

11   6 Entity has on any occasion engaged in any unlawful conduct of any kind, such being

12   expressly denied.  Defendants are not estopped from challenging class certification in

13   further proceedings in this action or in any other action if the Agreement is not finally

14   approved.

15         **B.   Severability of the Agreement**

16         Whenever possible, each provision and term of this Agreement shall be interpreted

17   in such a manner as to be valid and enforceable; provided, however, that in the event that

18   after Effective Approval any provision or term of this Agreement should be determined

19   to be or rendered unenforceable on collateral review, all other provisions and terms of

20   this Agreement and the application to all persons and circumstances shall remain

21   unaffected to the extent permitted by law.  If any application of any provisions or term of

22   this Agreement to any specific person or circumstance should be determined to be invalid

23   or unenforceable, the application of such provision or term to other persons or

24   circumstances shall remain unaffected to the extent permitted by law.

25         **C.   Duty to Support and Defend the Agreement**

26         Class Representatives, Class Counsel, and Defendants each agree to abide by all of

27   the terms of this Agreement in good faith and to support it fully, and shall use Best

28   Efforts to defend this Agreement from any legal challenge, whether by appeal or

29   collateral attack.

1       **D.      No Assignment**

2           Each Party represents, covenants, and warrants that he, she, or it has not directly or

3   indirectly assigned, transferred, encumbered, or purported to assign, transfer, or

4   encumber any portion of any liability, claim, demand, cause of action, or rights that he,

5   she, or it releases in this Agreement.

6       **E.      Binding on Successors and Assigns**

7           This Agreement shall be binding upon and inure to the benefit of the Parties and

8   their respective heirs, trustees, executives, successors, and assigns.  Without limiting the

9   generality of the foregoing, each and every covenant and agreement made by Plaintiffs

10  shall be binding upon all Class Members.

11      **F.      Entire Agreement**

12          This Agreement contains the entire understanding of the Parties with respect to the

13  subject matter contained.  There are no promises, representations, warranties, covenants,

14  or undertakings governing the subject matter of this Agreement other than those

15  expressly set forth in this Agreement.  This Agreement supersedes all prior agreements

16  and understandings among the Parties with respect to the settlement of the Action,

17  including, but not limited to, the settlement agreement filed by the Parties with the Court

18  on November 2, 2018.  This Agreement may not be changed, altered, or modified, except

19  in writing signed by the Parties; if any such change, alteration, or modification of the

20  Agreement is material, it must also be approved by the Court.

21      **G.      Construction**

22          The Parties agree that the terms and conditions of this Agreement are the result of

23  lengthy, intensive, arm's-length negotiations between the Parties, and that this Agreement

24  shall not be construed in favor of or against any Party by reason of the extent to which

25  any Party, or his, her, or its counsel, participated in the drafting of this Agreement.

1    **H.     Captions**

2    Titles or captions contained in this Agreement are inserted as a matter of

3    convenience and for reference, and in no way define, limit, extend, or describe the scope

4    of this Agreement or any provision.

5    **I.     Class Member Signatures**

6    It is agreed that, because the Class Members are so numerous, it is impractical to

7    have each Class Member execute this Agreement.  The Notice will advise all Class

8    Members of the binding nature of the releases and of the remainder of this Agreement,

9    and in the absence of a valid and timely Request for Exclusion, such Notice shall have

10   the same force and effect as if each Class Member executed this Agreement.

11   **J.     Choice of Law**

12   Construction and interpretation of this Agreement shall be determined in

13   accordance with the laws of the State of Arizona, without regard to choice-of-law

14   principles.

15   **K.     Counterparts**

16    This Agreement and any amendments may be executed in one or more

17   counterparts, and either Party may execute any such counterpart, each of which when

18   executed and delivered shall be deemed to be an original and both of which counterparts

19   taken together shall constitute one and the same instrument.  A facsimile or PDF

20   signature shall be deemed an original for all purposes.

21   **L.     Authority**

22   The signatories represent that they are fully authorized to enter into this

23   Agreement and bind the Parties to the terms and conditions of this Agreement.

24   **M.     Receipt of Advice of Counsel**

25   The Parties acknowledge, agree, and specifically warrant to each other that they

26   have read this Agreement, have received legal advice with respect to the advisability of

27   entering into this settlement, and fully understand its legal effect.

1   THE UNDERSIGNED PARTIES made, executed, and entered into this agreement as of

2   the date the last Party has signed below.

3

4   DATED:  July 31, 2019

5                                      For Plaintiffs

6                             Andrés Holguin-Flores

7                                Printed Name

8                           Plaintiffs' Counsel

9                                       Title

10

11

12   DATED:  July 31, 2019                                             12

13                                   For Defendants

                                     Stacie Tobin

                                     Printed Name

                               Counsel for Defendants

                                     Title